DONALD J. DeGABRIELLE, JR.
United States Attorney
DAVID GUERRA
Assistant United States Attorney
Southern District of Texas

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division
JEAN E. WILLIAMS, Chief
Wildlife and Marine Resources Section
JIMMY A. RODRIGUEZ, Trial Attorney
Attorney-In-Charge
Texas Bar No. 24037378
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
(202) 305-0342 (tel.)
(202) 305-0275 (fax)

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

|  |  |  |
|---|---|---|
| MC ALLEN GRACE BRETHREN CHURCH, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.  07-CV-060 |
| United States Attorney General, Alberto Gonzales, et al., | ) | **DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING THE RESOLUTION OF PARALLEL CRIMINAL PROCEEDING** |
| Defendants. | ) | |

Defs' Mot. to Dismiss                                              Case No. CV 07-060

1

# TABLE OF CONTENTS

2
PAGE

3  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

4  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 4

5       A.   FACTUAL BACKGROUND . . . . . . . . . . . . . . 4

6       B.   STATUTORY BACKGROUND . . . . . . . . . . . . . 6

7            1.   The Bald and Golden Eagle Protection Act . . . . 6

8            2.   The Migratory Bird Treaty Act . . . . . . . . 7

9            3.   The Administrative Procedure Act . . . . . . . 8

10 STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . 9

11 ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 11

12 I.   HECK V. HUMPHREY REQUIRES THE DISMISSAL OF THIS ACTION . 11

13 II.  THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS
        SEEKING THE RETURN OF EAGLE FEATHERS DUE TO PLAINTIFFS'
14      FAILURE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES . . . . 16

15 III. PLAINTIFFS HAVE NAMED IMPROPER PARTIES AS DEFENDANTS IN
        THIS ACTION . . . . . . . . . . . . . . . . . . . . . 20
16

17 IV.  IN THE ALTERNATIVE TO DISMISSAL, THIS ACTION SHOULD BE
        STAYED . . . . . . . . . . . . . . . . . . . . . . . . 22

18

19

20

21

22

23

24

25

26

27

**TABLE OF AUTHORITIES**

CASES                                                                    PAGE

American Airlines v. Herman, 176 F.3d 283, 287
   (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . .  17

American Med. Ass'n v. Bowen, 857 F.2d 267, 272
   (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . .  18

Andrus v. Allard, 444 U.S. 51, 57 (1979)  . . . . . . . . . . . 6

ARCA Airlines, Ltda. v. U.S. Customs Serv., 726 F. Supp. 827,
   830 (S.D. Fla. 1989), aff'd, 945 F.2d 413 (11th Cir. 1991)   20

Barrera-Montenegro v. United States, 74 F.3d 657, 659
   (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 9, 10

Bell Atlantic Corp. v. Twombly,  -- S.Ct. ---, 2007 WL 1461066
(U.S.)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Boren Swindell & Assocs., L.L.P. v. Friedman, 2006 WL 739990,
   *3 (N.D. Tex. Mar. 23, 2006) . . . . . . . . . . . . . . . . 8

Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir. 1994) . . 11, 12, 13

Burke v. DEA, 968 F. Supp. 667 (M.D. Ala. 1997) . . . . . . 20

Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) . . . 23

Davis v. Bayless, 70 F.3d 367, 372 n. 3 (5th Cir. 1995) . . . . 9

Defenders of Wildlife v. EPA, 882 F.2d 1294, 1302
   (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 8

Gregory v. Mitchell, 634 F.2d 199, 204 (5th Cir. 1981) . . . 23

Heck v. Humphrey, 512 U.S. 477 (1994) . . . . . . . . . 1, 4, 11

Heckler v. Chaney, 470 U.S. 821, 831 (1985) . . . . . . . . 14

Houck v. Oklahoma Workers Comp. Court, 2005 WL 3536092, *2
   (W.D. Okla. December 22, 2005) . . . . . . . . . . . . . . 21

Ibarra v. United States, 120 F.3d 472, 476 (4th Cir. 1997) .  17

Imbler v. Pachtman, 424 U.S. 409 (1976) . . . . . . . . . . 22

Jeffery v. Owens, 2006 WL 3625690, *1 (5th Cir. 2006)
   (unpublished) . . . . . . . . . . . . . . . . . . . . . . 13

1  <u>Johnson v. Onion</u>, 761 F.2d 224, 226 (5th Cir. 1985) . . . . .  13

2  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985) . . . . . . .  22

3  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994)  10

4  <u>Landis v. North American Co.</u>, 299 U.S. 248, 254-55, (1936)  .  22

5  <u>Manguno v. Prudential Prop. & Cas. Ins. Co.</u>, 276 F.3d 720, 723
6      (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . .  18

7  <u>McCarthy v. Marshall</u>, 723 F.2d 1034, 1037 (1st Cir.1983)  . . . 8

8  <u>McConathy v. Dr.Pepper/Seven Up Corp.</u>, 131 F.3d 558, 561
       (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 9

9  <u>McKart v. United States</u>, 395 U.S. 185 (1969) . . . . . . . .  18

10 <u>Missouri v. Holland</u>, 252 U.S. 416 (1920)  . . . . . . . . . . . 7

11 <u>Raz v. Lee</u>, 343 F.3d 936, 938 (8th Cir. 2003) . . . . . . . . . 8

12 <u>Samaad v. City of Dallas</u>, 940 F.2d 925, 934 . . . . . . . . .  18

13 <u>Shannon v. Sequeechi</u>, 365 F.2d 827, 829 (10th Cir. 1966)  . .  13

14 <u>Sierra Club v. U.S. Fish & Wildlife Serv.</u>, 245 F.3d 434, 444
15     (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 9

16 <u>Southern Christian Leadership Conference v. Supreme Court of</u>
       <u>Louisiana</u>, 252 U.S. 781, 786 (5th Cir. 2001)  . . . . . . . . 9

17 <u>Stockman v. Federal Election Commission</u>, 138 F.3d 144, 151
18     (5th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . 10

19 <u>Summerlin v. Fronteriza Silver Mining & Milling Co.</u>, 41 F. 249
       (W.D. Tex. 1890) . . . . . . . . . . . . . . . . . . . . . . .  21

20 <u>Summers v. Eidson</u>, 2006 WL 3071226, *1 (5th Cir. 2006)  . . .  13

21 <u>Thomes v. Equitable Sav. & Loan Ass'n</u>, 837 F.2d 1317, 1318
22     (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . .  17

23 <u>United States v. Cox</u>, 342 F.2d 167, 171 (5th Cir. 1965) . . .  14

24 <u>United States v. Kordel</u>, 397 U.S. 1 (1970) . . . . . . . . .  22

25 <u>United States v. Payner</u>, 447 U.S. 727, 731-732 (1980) . . . .  16

26 <u>Valley Forge Christian College v. Americans United for</u>
       <u>Separation of Church & State</u>, 454 U.S. 464, 474 (1982)  15, 16

27

<u>Von Hoffburg v. Alexander</u>, 615 F.2d 633, 637 (5th Cir. 1980)    18


<u>FEDERAL STATUTES</u>

5 U.S.C. § 703   . . . . . . . . . . . . . . . . . . . . . . .    22
5 U.S.C. § 706   . . . . . . . . . . . . . . . . . . . . . . .     9
16 U.S.C. § 668  . . . . . . . . . . . . . . . . . . . . . . .     6
16 U.S.C. § 703  . . . . . . . . . . . . . . . . . . . . . .  4, 7
16 U.S.C. § 703(a)   . . . . . . . . . . . . . . . . . . . .  7, 8
16 U.S.C. § 704  . . . . . . . . . . . . . . . . . . . . . . .     8
16 U.S.C. § 712  . . . . . . . . . . . . . . . . . . . . . . .     7
28 U.S.C. § 2201(a)  . . . . . . . . . . . . . . . . . . . . .     8
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . .    11


<u>FEDERAL REGULATIONS</u>

50 C.F.R. § 12.24   . . . . . . . . . . . . . . . . . . .  19, 20
50 C.F.R. § 12.24(a)   . . . . . . . . . . . . . . . . . . . .    19
50 C.F.R. § 12.24(b)   . . . . . . . . . . . . . . . . . . . .    19
50 C.F.R. § 12.24(e)   . . . . . . . . . . . . . . . . . . . .    19
50 C.F.R. § 12.24(g)   . . . . . . . . . . . . . . . . . .  19, 20
50 C.F.R. § 21.1 . . . . . . . . . . . . . . . . . . . . . . .     8

<u>FEDERAL RULES</u>

Fed. R. Civ. P. 12(b)(6)   . . . . . . . . . . . . . . . . . .     1

1   Federal Defendants, United States Attorney General, Alberto

2   Gonzales, et al., hereby move to dismiss Plaintiffs' Complaint

3   pursuant to Federal Rules of Civil Procedure 12(b)(6) and

4   12(b)(1) or, in the alternative, to stay this action pending the

5   resolution of criminal proceedings in United States of America v.

6   Cleveland, 06-MJ-04806 (S.D. Tex.).

7                           **INTRODUCTION**

8       Plaintiffs' Complaint must be dismissed because this action

9   necessarily challenges the validity of an ongoing criminal

10  proceeding.  Specifically, the operative facts that bring rise to

11  Plaintiffs' claims in this case arise from the same facts that

12  are at issue in United States of America v. Cleveland, 06-MJ-

13  04806, currently pending in the Southern District of Texas.  As

14  discussed below, the Supreme Court held in Heck v. Humphrey, 512

15  U.S. 477 (1994), that an action may not proceed where success on

16  a claim would necessarily implicate the validity of a criminal

17  prosecution involving the same conduct unless the criminal

18  defendant has successfully terminated the criminal action (e.g.,

19  a reversal on appeal).  Pursuant to Heck, the conviction of

20  Plaintiff Michael Cleveland in United States of America v.

21  Cleveland, 06-MJ-04806, and the ongoing appeal of that

22  conviction, bars Plaintiffs' claims in this suit.

23      With their Complaint, Plaintiffs assert nine separate claims

24  against Defendants.  First, Plaintiffs allege that Defendants'

25  interpretation of the Migratory Bird Treaty Act ("MBTA") and the

26  Bald and Golden Eagle Protection Act ("BGEPA") violate the

27

Defs' Mot. to Dismiss          - 1 -          Case No. CV 07-060

1  Religious Freedom Restoration Act ("RFRA").  Complaint ("Compl.")

2  at ¶¶ 39-40 (Count One).  Second, Plaintiffs claim that

3  Defendants' application of the MBTA and BGEPA violates

4  Plaintiffs' free exercise of religion under the First Amendment

5  to the United States Constitution.  Compl. at ¶¶ 41-56 (Count

6  Two).  Third, Plaintiffs contend that Defendants' application of

7  the MBTA and BGEPA violates the Fifth and Fourteenth Amendments

8  to the Constitution.  Compl. at ¶¶ 57-58 (Count Three).  Fourth,

9  Plaintiffs allege that Defendants' application of the MBTA and

10  BGEPA is contrary to the statutes' plain language. Compl. at ¶¶

11  59-63 (Count Four).  Fifth, Plaintiffs contend that Defendants'

12  March 11, 2006 actions -- including the confiscation of feathers

13  -- violated the Fourth Amendment to the Constitution.  Compl. at

14  64-66 (Count 5).  Sixth, Plaintiffs claim that the United States

15  Fish and Wildlife Service's confiscation of certain feathers

16  violates their right to due process under the Fifth Amendment to

17  the Constitution.  Compl. at ¶¶ 67-70 (Count Six).  Seventh,

18  Plaintiffs allege that Defendants' actions were arbitrary and

19  capricious in violation of the Administrative Procedure Act

20  ("APA").  Compl. at ¶ 71 (Count 7).  Eighth, Plaintiffs allege

21  that Defendants' interpretation of the MBTA violates principles

22  of international law.  Compl. at ¶¶ 72-82 (Count 8).  Finally,

23  Plaintiffs appear to assert an independent claim for alleged

24  violations of the Declaratory Judgment Act based upon Defendants'

25  interpretation and application of the MBTA and BGEPA.  Compl. at

26  ¶¶ 83-84 (Count 9).

27

1    With regard to remedy, Plaintiffs seek a declaratory

2   judgment stating that Defendants' interpretation of the MBTA and

3   the BGEPA violate the language of the statutes themselves, the

4   APA, RFRA, international law, and the Constitution of the United

5   States.   Compl. at ¶¶ 1-5 (Prayer for Relief).   In addition,

6   Plaintiffs seek an order requiring Defendants to return all

7   "feathers and things seized on or about March 11, 2006," id. at ¶

8   6, and an order compelling Defendants to "protect the feathers

9   seized on or about March 11, 2006 . . ." from harm, id. at ¶ 7.

10  Finally, Plaintiffs ask the Court to issue an order "enjoining

11  Defendants from enforcing the MBTA and BGEPA against any

12  Plaintiff anywhere within the jurisdiction of the federal courts

13  of the United States."   Id. at ¶ 5.

14    The Court need go no further than the Supreme Court's

15  holding in Heck v. Humphrey in order to dismiss this case in its

16  entirety.   Further, if Plaintiffs argue that their claims

17  regarding the forfeiture of eagle feathers provide an independent

18  basis for allowing this case to proceed, any such argument would

19  be futile because the Court lacks jurisdiction over those claims.

20  Specifically, Plaintiffs' claims regarding the forfeiture of

21  eagle feathers are not ripe for review due to their failure to

22  exhaust administrative remedies.   Moreover, even assuming that

23  Plaintiffs could collaterally attack a pending criminal case,

24  Plaintiffs have failed to name the proper parties as Defendants

25  in this action.   Finally, in the alternative to dismissal,

26  Federal Defendants request that the Court exercise its inherent

27

Defs' Mot. to Dismiss          - 3 -          Case No. CV 07-060

1  authority to stay this action pending the resolution of the

2  criminal proceeding in United States of America v. Cleveland.

3                              **BACKGROUND**

4       **A.   FACTUAL BACKGROUND**

5       On March 11, 2006, Agent Alejandro Rodriguez of the United

6  States Fish and Wildlife Service ("FWS") attended an American

7  Indian powwow in McAllen, Texas.  Compl. at ¶ 38.  The powwow was

8  held at the Palm View Library and Community Center in McAllen; it

9  was advertised in a local newspaper and was open to the public.

10 Id. Agent Rodriguez approached a vending booth operated by

11 Plaintiff Mr. Cleveland and his mother, where he observed on

12 display several "dream catchers" bearing bird feathers.  Id.

13 After making a preliminary determination that the feathers

14 belonged to protected migratory birds, Agent Rodriguez

15 confiscated eight feathers, six of which were later confirmed by

16 laboratory analysis as belonging to bird species protected under

17 the MBTA.  Id.  At the powwow, Agent Rodriguez also encountered

18 Plaintiffs Soto and Russell, who were in the possession of eagle

19 feathers.  Plaintiff Russell's eagles feathers were seized as

20 being in violation of the BGEPA. Id.  The eagle feathers in the

21 possession of Plaintiff Soto were not seized at the powwow. Id.

22      Plaintiff Mr. Cleveland was subsequently charged with the

23 unlawful possession, sale, offer to sell, or transportation of

24 migratory birds, their parts, or eggs without a permit, in

25 violation of the MBTA, 16 U.S.C. § 703.  See Docket Sheet for

26 United States v. Cleveland, Exhibit 1.  After a bench trial

27

before United States Magistrate Judge Dorina Ramos, Mr. Cleveland was convicted and ordered to pay a $200 fine. Id. at Doc. No. 57. Mr. Cleveland has appealed his conviction to the District Court Judge. Id. Doc. No. 62. The court heard argument on the appeal on May 17, 2007 and took the matter under advisement. Id. Doc. No. 68.[1]/

On March 23, 2006, Plaintiffs Michael Russell and Robert Soto (along with their attorney) met with Agent Rodriguez in an effort to resolve the matter concerning their possession of eagle feathers. Compl. at ¶ 38. At the meeting, Mr. Russell agreed to pay a $500 fine for the possession of eagle feathers and both Mr. Russell and Mr. Soto agreed to voluntarily abandon the feathers that they possessed on the day of the powwow. Id.; see also attachment B to Declaration of Alan R. Woodcock ("Woodcock Decl."), Exhibit 2.[2]/  In exchange, the criminal investigation was concluded without further criminal charges being filed against Plaintiffs Soto and Russell. Id. The voluntary abandonment form signed by Mr. Russell and Mr. Soto provided them

---

[1]/ Because this is a motion to dismiss under Rule 12, the proceeding facts are taken from Plaintiffs' Complaint or, they are judicially noticeable official records in the Court's docket. See infra at 9 (discussing facts properly considered in a Rule 12(b)(6) motion).  If this case proceeds past the pleadings stage, Defendants reserve the right to dispute any alleged facts as appropriate.

[2]/ The Declaration of Alan Woodcock and the accompanying attachments support Defendants' jurisdictional arguments regarding ripeness/exhaustion and are therefore properly considered in deciding the Rule 12(b)(1) portion of this motion. See infra at 10 (discussing facts properly considered in a Rule 12(b)(1) motion).

1   the right to file a petition for the remission of their property

2   within 60 days.  Id.  Mr. Russell and Mr. Soto availed themselves

3   of this process by petitioning the Department of the Interior for

4   the remission of the feathers.  Woodcock Decl. at ¶¶ 1-7.  Their

5   petition for remission was denied as untimely on February 23,

6   2007.  Id.  In accordance with the regulations governing

7   petitions for remissions, Mr. Soto and Mr. Russell then filed a

8   Supplemental Petition for Remission on March 2, 2007, which is

9   still pending.  Id.

10       **B.   STATUTORY BACKGROUND**

11            **1.   The Bald and Golden Eagle Protection Act**

12       The Bald an Golden Eagle Protection Act, which was enacted

13   in 1940, provides comprehensive protection for bald and golden

14   eagles.  See 16 U.S.C. § 668; Andrus v. Allard, 444 U.S. 51, 57

15   (1979) ("The broad proscriptive provisions of the Eagle

16   Protection Act were consistently framed to encompass a full

17   catalog of prohibited acts . . . ."). The Bald and Golden Eagle

18   Protection Act imposes criminal and civil penalties on anyone

19   who, unless excepted, takes, possesses, sells, purchases,

20   barters, offers to sell or purchase or barter, transports,

21   exports or imports at any time or in any manner a bald or golden

22   eagle, alive or dead; or any part, nest or egg of these eagles.

23   16 U.S.C. §§ 668(a)-(b).  Under 16 U.S.C. § 668c, the Bald and

24   Golden Eagle Protection Act's definition of the term "take" also

25   includes those activities that would "molest or disturb," as well

26   as "kill" or "injure" bald eagles.

27

## 2.   <u>The Migratory Bird Treaty Act</u>

The MBTA was enacted in 1918 to implement a convention between the United States and Great Britain protecting migratory birds.[3]/ 16 U.S.C. §§ 703, 712; <u>see</u> Convention between the United States and Great Britain for the protection of migratory birds, August 16, 1916, 39 Stat. 1702, T.S. No. 628.  By enacting the MBTA, Congress asserted regulatory authority over migratory birds which previously had been exercised only by the individual states.  <u>See</u> <u>Missouri v. Holland</u>, 252 U.S. 416 (1920).  The cornerstone of the protections afforded by the MBTA is found in § 703. 16 U.S.C. § 703(a).  That section provides:

> Unless and except as permitted by regulations
> made as hereinafter provided in this
> subchapter, it shall be unlawful at any time,
> by any means or in any manner, to pursue,
> hunt, take, capture, kill, attempt to take,
> capture, or kill, possess, offer for sale,
> sell, offer to barter, barter, offer to
> purchase, purchase, deliver for shipment,
> ship, export, import, cause to be shipped,
> exported, or imported, deliver for
> transportation, transport or cause to be
> transported, carry or cause to be carried, or
> receive for shipment, transportation,
> carriage, or export, any migratory bird, any
> part, nest, or egg of any such bird, or any

---

[3]/    The MBTA has since been amended to implement conventions which the United States has signed with Mexico, Japan, and the Soviet Union. <u>See</u> Convention between the United States and Mexico for the protection of migratory birds and game mammals, February 7, 1936, United States-Mexico, 50 Stat. 1311, T.S. No. 912; Convention for the Protection of Migratory Birds and Birds and Their Environment, March 4, 1972, United States-Japan, 25 U.S.T. 3329, T.I.A.S. No. 7990; Convention Concerning the Conservation of Migratory Birds and Their Environment, November 19, 1976, United States-USSR, 29 U.S.T. 4647, T.I.A.S.  No. 9073. The MBTA was amended in 1978 by the Fish and Wildlife Improvement Act to implement the United States-USSR Convention. 16 U.S.C. § 712.

> product, whether or not manufactured, which
> consists, or is composed in whole or in part,
> of any such bird or any part, nest, or egg
> thereof, included in the terms of the
> conventions * * * for the protection of
> migratory birds and birds in danger of
> extinction, and their environment * * * .

Id.

Section 704 of the MBTA authorizes the Department of the Interior to determine when, and to what extent, to permit takings of migratory birds.  16 U.S.C. § 704.  The Department of the Interior has issued regulations for this purpose.  50 C.F.R. §§ 21.1 et seq.

### 3.   The Administrative Procedure Act

To the extent that there is any applicable waiver of sovereign immunity in this case, it is provided by the Administrative Procedure Act.  Neither the Constitution nor the Declaratory Judgment Act provide a waiver of sovereign immunity. See, e.g., Boren Swindell & Assocs., L.L.P. v. Friedman, No. 05-64, 2006 WL 739990, *3 (N.D. Tex. Mar. 23, 2006) (noting that "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not constitute a waiver of sovereign immunity because the Act 'neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief'") (quoting McCarthy v. Marshall, 723 F.2d 1034, 1037 (1st Cir.1983)); Raz v. Lee, 343 F.3d 936, 938 (8th Cir. 2003) (holding that the APA provides the waiver of sovereign immunity for a plaintiff's Constitutional claims).  Moreover, neither the MBTA nor BGEPA contain a citizen-suit provision or otherwise provide a private cause of action.  See Defenders of

1  <u>Wildlife v. EPA</u>, 882 F.2d 1294, 1302 (8th Cir. 1989).

2      If this case were to proceed to the merits, the judicial

3  inquiry into whether an agency has fulfilled its substantive

4  obligations under the law would be governed by the judicial

5  review provisions of the Administrative Procedure Act, 5 U.S.C. §

6  706. Such review "is generally limited to the record in existence

7  at the time the agency made its decision." <u>Sierra Club v. U.S.</u>

8  <u>Fish & Wildlife Serv.</u>, 245 F.3d 434, 444 (5th Cir. 2001).

9                    **STANDARD OF REVIEW**

10      Under Rule 12(b)(6), a claim may be dismissed when a

11  plaintiff fails to allege any set of facts in support of his

12  claim which would entitle him to relief. <u>McConathy v.</u>

13  <u>Dr.Pepper/Seven Up Corp.</u>, 131 F.3d 558, 561 (5th Cir. 1998); <u>but</u>

14  <u>see</u> <u>Bell Atlantic Corp. v. Twombly</u>, -- S.Ct. ---, 2007 WL

15  1461066 (U.S.) (holding that the "no set of facts" standard for a

16  12(b)(6) motion is no longer controlling and "is best

17  forgotten"). When considering a motion to dismiss, the court

18  accepts as true the well-pled factual allegations in the

19  complaint, and construes them in the light most favorable to the

20  plaintiff. <u>McConathy</u>, 131 F.3d at 561. However, "conclusory

21  allegations or legal conclusions masquerading as factual

22  conclusions will not suffice to prevent a motion to dismiss."

23  <u>Southern Christian Leadership Conference v. Supreme Court of</u>

24  <u>Lousiana</u>, 252 F.3d 781, 786 (5th Cir. 2001) (quoting <u>Fernandez-</u>

25  <u>Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir.

26

27

1   1993)).   In addition, courts may refer to matters of public

2   record when deciding a Rule 12(b)(6) motion to dismiss.   <u>Davis v.</u>

3   <u>Bayless</u>, 70 F.3d 367, 372 n. 3 (5th Cir. 1995).

4        Rule 12(b)(1) allows motions for dismissal based on the

5   argument that the federal court does not have the right to

6   exercise its limited jurisdiction because of the subject matter

7   presented in a complaint.   <u>Barrera-Montenegro v. United States</u>,

8   74 F.3d 657, 659 (5th Cir. 1996).   "It is incumbent on all

9   federal courts to dismiss an action whenever it appears that

10  subject matter jurisdiction is lacking. 'This is the first

11  principle of federal jurisdiction.'" <u>Stockman v. Federal Election</u>

12  <u>Commission</u>, 138 F.3d 144, 151 (5th Cir.1998) (quoting Hart &

13  Wechsler, <u>The Federal Courts and the Federal System</u> 835 (2d

14  ed.1973)).   As the party invoking jurisdiction, the plaintiff

15  carries the burden of establishing subject-matter jurisdiction.

16  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).

17  The Court may examine evidence outside of the pleadings when

18  deciding a Rule 12(b)(1) motion to dismiss for lack of subject-

19  matter jurisdiction.   <u>Barrera-Montenegro</u>, 74 F.3d at 659.   It is

20  well established that the district court may base its decision on

21  a Rule 12(b)(1) motion on "(1) the complaint alone; (2) the

22  complaint supplemented by undisputed facts evidenced in the

23  record; or (3) the complaint supplemented by undisputed facts

24  plus the court's resolution of disputed facts." <u>Id</u>. (quotations

25  omitted).

26

27

1

**ARGUMENT**

2

**I.      HECK V. HUMPHREY REQUIRES THE DISMISSAL OF THIS ACTION.**[4]/

3        The conviction of Plaintiff Michael Cleveland in United

4    States of America v. Cleveland, 06-MJ-04806, and the ongoing

5    appeal of that conviction, bars Plaintiffs' claims in this suit.

6        In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court

7    held that a plaintiff may not bring a civil suit collaterally

8    attacking the validity of his criminal conviction unless that

9    conviction has been previously overturned.  512 U.S. 477.  In

10   Heck, a plaintiff who had been previously convicted of a crime

11   brought a 42 U.S.C. § 1983 action against the prosecutors and

12   investigators who were responsible for his criminal conviction.

13   Id. at 478-80.  The Court found that the civil suit involved the

14   same facts underlying plaintiff's criminal conviction and that a

15   ruling in plaintiff's favor would necessarily call into question

16   the validity of his conviction.  Id.  On these facts, the Court

17   held that, before such a civil suit could proceed, a plaintiff's

18   conviction must have been reversed on appeal, expunged by

19   executive order, declared invalid by an authoritative state

20   tribunal, or called into question by the issuance of a writ of

21   habeas corpus by a federal court.  Id. at 486-87.

22       Shortly after the Supreme Court decided Heck v. Humphrey,

23   the Fifth Circuit applied the decision to facts that are similar

24   _____

25   [4]/   With this motion, Defendants have focused on Heck v. Humphrey
     because it clearly mandates dismissal.  In so doing, however,

26   Defendants have not exhausted every available legal argument and
     reserve the right to move the Court for dismissal based on grounds

27   not set forth in this motion should the case proceed.

1  to the case currently before the Court.  In <u>Boyd v. Biggers</u>, a

2  civil litigant attempted to challenge the constitutionality of

3  his criminal conviction and sentence.  31 F.3d 279, 283 (5th Cir.

4  1994).  The Fifth Circuit initially noted that the complaint,

5  among other things, alleged that the criminal investigator had

6  violated the civil litigant's rights by withholding exculpatory

7  evidence.  <u>Id.</u>  The <u>Boyd</u> court then found that if the civil

8  litigant successfully proved these claims, it "would call [his]

9  conviction into question under <u>Brady v. Maryland</u> []."  <u>Id.</u>  Based

10  on these facts, the Fifth Circuit held that all of the civil

11  litigant's claims fell squarely within the holding of <u>Heck</u> and

12  affirmed the dismissal of plaintiff's complaint with prejudice.

13  <u>Id.</u> at 284 (discussing whether it was appropriate to dismiss with

14  or without prejudice). Further, in determining plaintiff's claims

15  to be frivolous, the Fifth Circuit found it important that the

16  civil litigant in <u>Boyd</u> was not seeking monetary damages but

17  instead sought only to challenge the validity of his conviction.

18  <u>Id.</u>

19       In the instant case, the encompassing premises of

20  Plaintiffs' claims are (1) that Defendants have erred in

21  interpreting the laws prohibiting the possession of certain

22  feathers (<u>e.g.</u>, the MBTA) as applying to Native Americans who are

23  not registered members of federally recognized tribes and (2)

24  that the FWS Agent's actions on March 11, 2006, violated

25  Plaintiffs' Constitutional rights.  These legal questions, and

26  the underlying facts giving rise to them, are the exact issues

27

1  before the court in <u>United States of America v. Cleveland</u>.   This

2  is demonstrated by the fact that many, if not all, of the legal

3  claims asserted in this civil suit have also been asserted as

4  defenses to the criminal prosecution in <u>United States v.</u>

5  <u>Cleveland</u>.   <u>See</u> <u>generally</u> Appeal Brief, Exhibit 3.   Indeed, pages

6  10-23 of Plaintiffs' Complaint in this action appear to have been

7  taken directly from the appeal brief filed in <u>United States v.</u>

8  <u>Cleveland</u>.   <u>Compare</u> Exhibit 3 <u>with</u> Compl.   Furthermore,

9  Plaintiffs cite the trial transcript from <u>United States v.</u>

10 <u>Cleveland</u> throughout their Complaint.   <u>See</u>, <u>e.g.</u>, Compl. at pp.

11 10, 16, 17, 18, 19, 20, and 23.   As a result, it is

12 unquestionable that the facts underlying Mr. Cleveland's criminal

13 conviction are also the basis for the instant action; and any

14 success on Plaintiffs' claims here would call into question the

15 validity of his criminal conviction and interfere with the

16 ongoing appeal of that ruling.   Accordingly, this suit must be

17 dismissed pursuant to <u>Heck</u>.

18     The fact that Plaintiffs have asserted claims under the APA

19 and the Declaratory Judgment Act, rather than § 1983, does not

20 change the analysis. <u>See</u> <u>Boyd</u>, 31 F.3d at 283; <u>Jeffery v. Owens</u>,

21 2006 WL 3625690, *1 (5th Cir. 2006) (unpublished) (dismissing for

22 failure to state a claim a request for a declaratory judgment on

23 the basis of <u>Heck</u>); <u>Summers v. Eidson</u>, 2006 WL 3071226, *1 (5th

24 Cir. 2006) (same).   Indeed, if anything, the fact that Plaintiffs

25 have requested declaratory relief -- and not monetary damages --

26 makes it even more clear that the primary purpose of this suit is

27

to halt (or otherwise collaterally attack) the ongoing criminal proceedings in <u>United States of America v. Cleveland</u>.  This is plainly not permitted in the Fifth Circuit.  <u>Johnson v. Onion</u>, 761 F.2d 224, 226 (5th Cir. 1985) (holding that "'[t]he Declaratory Judgment Act does not provide a means whereby previous judgments by state or federal courts may be reexamined, nor is it a substitute for appeal or post conviction remedies'") (quoting <u>Shannon v. Sequeechi</u>, 365 F.2d 827, 829 (10th Cir. 1966)).[5]/

In an effort to distinguish this case from <u>Heck</u>, Plaintiffs are likely to note that Mr. Cleveland's criminal case does not involve the BGEPA.  In addition, Plaintiffs may argue that the seizure of Plaintiffs Soto's and Russell's eagle feathers does not involve the criminal prosecution of Plaintiff Cleveland in

---

[5]/   Plaintiffs' requested injunctive relief would also violate the dictates of <u>Heck</u>.  In their Complaint, Plaintiffs seek an injunction "enjoining Defendants from enforcing the MBTA and BGEPA against any Plaintiff anywhere within the jurisdiction of the federal courts of the United States."  Compl. at ¶ 5 (Prayer for Relief).  Because this requested relief would bar the government from proceeding with the prosecution in <u>United States v. Cleveland</u>, it would clearly run afoul of <u>Heck</u>.  In addition, Plaintiffs' requested injunctive relief is not available because it would violate constitutional separation of powers by requiring the Court to prospectively bar the Executive Branch from exercising its prosecutorial discretion. <u>See Heckler v. Chaney</u>, 470 U.S. 821, 831 (1985) (noting that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion"); <u>United States v. Cox</u>, 342 F.2d 167, 171 (5th Cir. 1965) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions").

United States v. Cleveland.  Any such arguments would not change the outcome here.  First, it is apparent from the Complaint that Plaintiffs' claims regarding the BGEPA involve the same legal theories at issue in Mr. Cleveland's prosecution under the MBTA. See Compl. at ¶¶ 38 and 39-84 (basing all Counts upon Defendants' interpretation and application of both the "MBTA and BGEPA").  Second, for the reasons explained below, even if Heck does not apply to Plaintiffs' claims regarding the eagle feathers, Plaintiffs Soto and Russell have failed to exhaust their administrative remedies; therefore, any claims regarding the seizure of their eagle feathers are not ripe for review.  See infra at 16.

Finally, Plaintiffs may claim that Heck applies only to Mr. Cleveland and not to the remaining named Plaintiffs.  Any such argument would fail in several respects.  First, regardless of the fact that there are numerous named Plaintiffs in this action, success by any one of them -- based upon the facts and legal theories at issue in United States v. Cleveland -- would undermine the criminal conviction of Mr. Cleveland and therefore violate the Heck v. Humphrey doctrine.  Second, for the reasons explained below, Plaintiffs Soto and Russell have failed to exhaust their administrative remedies.  Without the participation of Plaintiffs Cleveland, Soto, and Russell, the remaining Plaintiffs lack the requisite standing to bring this lawsuit.[6]/

---

[6]/  Ordinarily, a litigant "'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  Valley Forge Christian College v.

1    For all the reasons explained above -- including the

2    possibility of inconsistent rulings in the civil and criminal

3    cases and the fact that a criminal defendant cannot utilize a

4    civil suit to collaterally attack the validity of a criminal

5    conviction -- this case falls squarely within the holding of <u>Heck</u>

6    and it must be dismissed.

7    **II.**     **THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS
                 SEEKING THE RETURN OF EAGLE FEATHERS DUE TO PLAINTIFFS'
8                FAILURE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES.**

9    Assuming arguendo that the Court does not dismiss this

10   case in its entirety based on <u>Heck</u>, it should dismiss Plaintiffs'

11   claims regarding the forfeiture of eagle feathers because they

12   are not ripe for review. <u>See</u>, <u>e.g.</u>, Compl. at ¶¶ 67-70 (Count

13   6). Here, Plaintiffs Soto and Russell have availed themselves of

14   the established administrative procedure for securing the return

15   of their eagle feathers and that administrative process has not

16   yet been completed. <u>Thomes v. Equitable Sav. & Loan Ass'n</u>, 837

17   F.2d 1317, 1318 (5th Cir. 1988) (holding that because plaintiffs

18   "have not pursued their available administrative remedies, the

19   constitutional issue presented is not ripe for determination");

20   <u>Ibarra v. United States</u>, 120 F.3d 472, 476 (4th Cir. 1997)

21   (holding that where plaintiff's petition for reconsideration was

22

23   ─────────────────────

24   <u>Americans United for Separation of Church & State</u>, 454 U.S. 464,
     474 (1982) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975)).

25   This is generally so even when the very same allegedly illegal act
     that affects the litigant also affects a third party. <u>See</u> <u>United</u>

26   <u>States v. Payner</u>, 447 U.S. 727, 731-732 (1980) (criminal defendant
     "lacks [third-party] standing under the Fourth Amendment to

27   suppress ... documents illegally seized from" his banker).

1  pending before the agency when she brought action in district

2  court challenging forfeiture, district court lacked subject-

3  matter jurisdiction; claimant was required to await outcome of

4  administrative process that she invoked).

5         "Courts often decline to review an agency action because it

6  is not final, it is not ripe, or the petitioner did not exhaust

7  available administrative remedies. In many circumstances, the

8  three doctrines are difficult to distinguish, because the same

9  considerations of timing and procedural posture often can support

10 a holding based on ripeness, finality, or exhaustion." American

11 Airlines v. Herman, 176 F.3d 283, 287 (5th Cir. 1999) (citations

12 omitted).   Ripeness is an issue of subject-matter jurisdiction

13 as to which a plaintiff has the burden of proof. See Manguno v.

14 Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir.

15 2002); Samaad v. City of Dallas, 940 F.2d 925, 934 and n. 16 (5th

16 Cir. 1993) (noting that ripeness is jurisdictional matter that

17 cannot be waived).   "The ripeness doctrine is necessary to

18 prevent courts from becoming entangled in abstract disputes by

19 adjudicating an issue prematurely." American Med. Ass'n v.

20 Bowen, 857 F.2d 267, 272 (5th Cir. 1988) (citing Thomas v. Union

21 Carbide Agr. Products Co., 473 U.S. 568, 580 (1985)).   Similarly,

22 the exhaustion doctrine prevents courts from interfering with the

23 administrative process until it has reached a conclusion.[7]/

24

25 [7]/   In McKart v. United States, 395 U.S. 185 (1969), the Supreme
   Court noted that because the administrative agency is created as a
   separate entity and invested with certain powers and duties, the

26 courts should not interfere with an agency until it has completed

27 its action or clearly exceeded its jurisdiction. Id. at 194. The

Defs' Mot. to Dismiss          - 17 -          Case No. CV 07-060

1    Plaintiffs' Sixth Count regarding the alleged unlawful

2  seizure of feathers and other items, Compl. at ¶ 67, and

3  Plaintiffs' request for an order compelling the return of those

4  feathers, Compl. at ¶ 6 (Prayer for Relief), involve the

5  following:  First, certain feathers were seized in accordance

6  with the MBTA and are currently evidence in United States v.

7  Cleveland.  As a matter of common sense and for all the reasons

8  discussed above, the migratory bird feathers at issue in United

9  States v. Cleveland cannot be the subject of a civil suit

10 demanding their return until the criminal proceedings are

11 completed.  Second, there are certain eagle feathers that were

12 seized from, and abandoned by, Mr. Soto and Mr. Russell.  As

13 explained below, any claim seeking the return of these eagle

14 feathers must be dismissed because they are not ripe due to

15 Plaintiffs' failure to exhaust administrative remedies.

16     The Department of the Interior has established procedures

17 for the return of seized property.  The regulations found at 50

18 C.F.R. § 12.24 set forth the procedures for filing a petition for

19 remission in order to retrieve property that has been forfeited.

20 50 C.F.R. § 12.24(a).  The regulations specify the elements that

21 must be included in a petition for remission.  50 C.F.R. §

22

23 _____

24 Court enumerated the practical notions of judicial efficiency that
   are served by the exhaustion doctrine. For example, a complaining
25 party may be successful in vindicating his rights in the
   administrative process.  Thus, if a complainant is required to
26 pursue and exhaust his administrative remedies, the courts may
   never have to intervene. Von Hoffburg v. Alexander, 615 F.2d 633,
27 637 (5th Cir. 1980).

Defs' Mot. to Dismiss              - 18 -              Case No. CV 07-060

12.24(b).  The Solicitor of the Department of the Interior decides whether or not to remit the property and, "[i]n making a decision, . . . consider[s] the information submitted by the petitioner . . . ."  50 C.F.R. § 12.24(e).  "If the Solicitor decides that relief should not be granted, . . .[t]he petitioner may then file a supplemental petition [for remission]."  50 C.F.R. § 12.24(g).

Plaintiffs have availed themselves of this administrative remedy.  In particular, Mr. Soto and Mr. Russell, by and through their attorney, filed a document that the Department of the Interior construed as a petition for remission on July 10, 2006.  See Woodcock Decl., Exhibit 2, at ¶¶ 1-7.  The petition for remission was denied as untimely.  Id.  Mr. Soto and Mr. Russell subsequently filed a supplemental petition for remission on March 2, 2007.  Id.  There has been no decision on that supplemental petition.  Id.  Consequently, Plaintiffs' administrative remedies have not been exhausted and the claims regarding the return of the eagle feathers should be dismissed.[8]/

---

[8]/  It should be noted that the eagles feathers at issue were voluntarily relinquished to the FWS.  Specifically, Plaintiffs Soto and Russell signed a voluntary abandonment upon the release of the eagle feathers, which stated as follows:

> I(we) hereby abandon and quitclaim all of my (our) right, title and interest in and to the above-described property to the United States and waive any further rights or proceedings relative to this property other than my (our) right to file a petition for remission of this property as authorized by 50 C.F.R. 12.24.

Woodcock Decl. at Exhibit B.  As a result, once Plaintiffs do in fact exhaust their administrative remedies, it is not at all clear

**III.      PLAINTIFFS HAVE NAMED IMPROPER PARTIES AS DEFENDANTS IN
           THIS ACTION.**

Assuming for the sake of argument that the Court does not

dismiss Plaintiffs' entire Complaint based upon <u>Heck v. Humphrey</u>,

the Court should substitute the named Defendants with the

appropriate Federal entities.  First, the currently named

Defendants should be dismissed from this suit because Plaintiffs

have failed to assert any actual claims or material allegations

against them. <u>Summerlin v. Fronteriza Silver Mining & Milling

Co.</u>, 41 F. 249 (W.D. Tex. 1890) (holding that where a complaint

contains no allegations connecting one of the defendants with the

cause of action stated therein, the complaint will be dismissed

as to him); <u>Houck v. Oklahoma Workers Comp. Court</u>, No. Civ. No.

05-1247F, 2005 WL 3536092, *2 (W.D. Okla. December 22, 2005)

(same).

Plaintiffs have named the following persons as

Defendants:

> U.S. Attorney General, Alberto Gonzalez; U.S. Secretary
> of the Department of the Interior, Dirk Kempthorne;
> U.S. Fish and Wildlife Service Director H. Dale Hall;
> U.S. Chief of the Office of Law Enforcement for the
> FWS, Kevin R. Adams; Acting Regional Director, Region
> Two, FWS, Benjamin Tuggle; Special Agent in Charge,
> Region Two, FWS, Richard McDonald; U.S. Attorney,
> Southern District of Texas, Donald DeGabrielle, Jr.;

---

that they will have a private right of action in Federal District
Court to challenge the forfeiture. <u>Burke v. DEA</u>, 968 F. Supp. 667
(M.D. Ala. 1997); <u>ARCA Airlines, Ltda. v. U.S. Customs Serv.</u>, 726
F. Supp. 827, 830 (S.D.Fla. 1989) (noting that "remission decisions
are committed to the discretion of the executive") <u>aff'd</u>, 945 F.2d
413 (11th Cir. 1991).  In any event, the Court need not reach this
issue because, as explained above, these claims are not ripe for
review due to a failure to exhaust administrative remedies.

Resident Special Agent in Charge, FWS, Gary Young; and
U.S. Field Solicitor, Martin Steinmetz.

Compl., Caption, at 1.  Plaintiffs, however, fail to allege that
any of the named Defendants had any involvement in the alleged
wrongdoing.  Indeed, with regard to Defendant Martin Steinmetz,
Plaintiffs even fail to describe him in the "Parties" section of
the Complaint.  That is, Martin Steinmetz's name is found in the
caption but nowhere else in the Complaint.  With regard to the
other named Defendants, they are mentioned <u>only</u> in the "Parties"
portion of the Complaint; they are not accused of taking any
actions in the remainder of the Complaint.  These Defendants
should be dismissed from the case.[9]/

Second, if the Court determines that this case should
proceed, the relevant agencies should be substituted as the named
Defendants.  Here, the named Defendants have been sued in their
official capacity.  As the Supreme Court has noted, official-
capacity suits "'generally represent only another way of pleading
an action against an entity of which an officer is an agent.'"
<u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)(quoting <u>Monell v.
New York City Dep't of Social Servs.</u>, 436 U.S. 658, 690, n. 55
(1978)).  Further, the APA generally permits actions against "the
agency by its official title . . . ."  5 U.S.C. § 703.

_____

[9]/   Although Plaintiffs make no factual allegations against
Attorney General Gonzalez or United States Attorney DeGabrielle, it
should be noted that they enjoy absolute immunity from any claim
based upon their alleged decision to prosecute a case based on a
particular interpretation of a statute.  <u>See</u> <u>Imbler v. Pachtman</u>,
424 U.S. 409 (1976) (noting that prosecutors enjoy absolute
immunity for acts taken to initiate a prosecution).

Accordingly, should the Court not dismiss this suit based upon Heck, the current Defendants should be dismissed and the United States Department of the Interior and the United States Fish and Wildlife Service should be substituted as the named Defendants.

**IV.      IN THE ALTERNATIVE TO DISMISSAL, THIS ACTION SHOULD BE STAYED.**

In Landis v. North American Co., 299 U.S. 248, 254-55, (1936), the Supreme Court recognized that the power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket. . . ." Id. The exercise of this power is discretionary but appropriate if it furthers the interests of justice. United States v. Kordel, 397 U.S. 1 (1970). In a pre-Heck decision, the Fifth Circuit provided guidance to assist district courts in their assessment of the competing interest in parallel civil and criminal actions. Specifically, the Fifth Circuit stated the following:

> There is a clearcut distinction between private interests in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure . . . The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962).[10]/ Thus,

---

[10]/  If the case were decided after Heck v. Humphrey, the Fifth Circuit would likely have found that dismissal, rather than a stay,

1   the strong public interest in law enforcement warrants giving

2   priority to a related criminal proceeding.  Further, as a

3   practical matter, allowing a civil action to proceed may

4   impermissibly permit a civil litigant who is also a criminal

5   defendant to obtain broader discovery than he could obtain in the

6   criminal proceeding.  See Campbell, 307 F.2d at 487.

7   Consequently, at a minimum, a civil suit should be stayed pending

8   the resolution of a parallel criminal action.

9        Here, in order to prevent prejudice to the pending criminal

10  proceedings, the Court should stay this action until the parallel

11  criminal case has been resolved.  In addition, because the

12  resolution of the criminal action may have a dispositive effect

13  on the instant litigation, judicial economy will be furthered by

14  permitting the criminal action to run its course.  Further, the

15  Court should, at a minimum, stay Plaintiffs' claims regarding the

16  eagle feathers until the administrative process has terminated.

17  Based on the foregoing, Federal Defendants ask the Court to stay

18  the instant litigation -- as an alternative to dismissal -- until

19  such time as the criminal action and the administrative process

20  have been completed.

21

22

23

24

25

26  _____

27  was required.

Defs' Mot. to Dismiss              - 23 -              Case No. CV 07-060

DATED:      May 21, 2007

                              DONALD J. DeGABRIELLE, JR.
                              United States Attorney
                              DAVID GUERRA
                              Assistant United States Attorney
                              Southern District of Texas

                              MATTHEW J. MCKEOWN
                              Acting Assistant Attorney General

                              S/Jimmy A. Rodriguez
                              JIMMY A. RODRIGUEZ, Trial Attorney
                              Attorney-in-Charge
                              Texas Bar No. 24037378
                              United States Department of Justice
                              Environment & Natural Resources
                              Division
                              Wildlife & Marine Resources Section
                              P.O. Box 7369, Ben Franklin Station
                              Washington, D.C. 20044-7369
                              Tel: (202) 305-0342
                              Fax: (202) 305-0275

                              Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2007, I served a copy of the foregoing via overnight delivery, on the following:

Dr. Milo Lone-Eagle Colton
Marisa Y. Salazar
Civil Rights Legal Defense & Edu. Fund, Inc.
519 Culebra Road
San Antonio, Texas 78201
Telephone: 210-334-5209

s/Jimmy A. Rodriquez
JIMMY A. RODRIGUEZ

Defs' Mot. to Dismiss                              Case No. CV 07-060