UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MCALLEN GRACE BRETHREN CHURCH, et al., Plaintiffs, v. United State Attorney General, Alberto Gonzales, et al., Defendants. | Civ. No. 07-cv-060 <br> DECLARATION OF ALAN R. WOODCOCK IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PENDING THE RESOLUTION OF PARRALLEL CRIMINAL PROCEEDING |

I, Alan R. Woodcock, do declare and state the following:

1. I make this declaration of my own personal knowledge to provide the U.S. Federal District Court information in order to assist the Court in rendering any decision it may make in the matter entitled: McAllen Grace Brethren Church v. Alberto Gonzales, Case # 07-CV-060.

2. I am the Field Solicitor, United States Department of the Interior, Tulsa, Oklahoma.

3. On July 10, 2006, this office received a document that was construed as a petition for remission from Mr. Russell and Mr. Soto, by and through their attorney, requesting the return of certain eagle feathers. See Exhibit A, July 4, 2006 Letter Requesting the Return of Eagle Feathers.

4. Mr. Soto's and Mr. Russell's petition for remission was denied as untimely on February 23, 2007. See Exhibit B, February 23, 2007 Letter Denying Petition for Remission.

5. In accordance with the regulations governing petitions for remission, Mr. Soto and Mr. Russell, by and through their attorney, filed a Supplemental Petition for Remission on March 2, 2007. See Exhibit C, Supplemental Petition for Remission.

6. Mr. Soto's and Mr. Russell's Supplemental Petition for Remission is currently under review by the Department of the Interior, Office of the Solicitor.

7. I declare under penalty of perjury, pursuant to Title 28, United States Code, Section 1746, that the foregoing is true and correct.

Executed this 17th day of May 2007, at Tulsa, Oklahoma.

Alan R. Woodcock

 The Civil Rights Legal Defense & Educational Fund, Inc.
519 Culebra Rd. • San Antonio, TX 78201 • (210) 334-5209

July 4, 2006

RECEIVED
JUL 10 2006
Department of the Interior
FIELD SOLICITOR
Tulsa, Oklahoma

Martin Steinmetz
Regional Solicitor
US Solicitor's Office
7906 E. 33d Street, Suite 100
Tulsa, OK 74145

RE: In the Matter of Robert Soto vs. United States Department of Interior: (1) Affidavits of Reverend Robert Soto and Michael V. Russell and (2) Relevant Material.

Dear Mr. Steinmetz:

Enclosed you will find information concerning the confiscation of sacred eagle feathers belonging to Reverend Robert Soto, a member of the Lipan Apache Band of Texas, by Special Agent Alejandro Rodriquez (Officer Number 575) of the U.S. Fish and Wildlife Service (USFWS), an agency within the U.S. Department of Interior, when he raided an American Indian pow wow in McAllen, Texas on March 11, 2006.

## I. FACTS

This is a case involving Reverend Robert Soto, a leader and holy man of the American Indian community of Texas and U.S. Department of Interior. Rev. Soto was profiled in a recent Texas pow wow publication accordingly:

> Robert Soto, a Lipan Apache, has been dancing for 40 years, since he was 8 years old. He has been a feather dancer for 34 years and has won many awards for his Indian dancing and artwork in various pow wows throughout the Nation. He also plays the Indian Love Flute and performs the Hoop dance and Eagle dance. Robert's dancing is his way of preserving the Native American Culture. When Robert Dances, he dances in honor of his ancestors who danced before him and for the glory and honor of the Lord Jesus Christ, who has given him the opportunity to dance. Robert enjoys his culture and will take every opportunity to share it with others. All of Robert's regalia was handmade by him – from the beadwork to the featherwork. His regalia goes with him wherever he travels. He has performed all over the United States. He, along with the South Texas Indian Dancers, perform about 85 times per year.

**Exhibit A to Woodcock Decl.**

During his dancing career, Robert has had the privilege to perform and share his heritage and faith internationally. He has traveled throughout Europe with six other Native Americans form the United States and Canada. His travels took him to France, Germany and Switzerland, in the jungles of South America among the Xavante Indians and for the grand Chiefs of eleven other tribal groups from Argentina and Brazil. Along with dancing abroad, he has performed in Mexico and Canada.

Robert Soto is presently chairman of the South Texas Indian Dancers, a group of about 45 dancers and non-dancers from 16 different tribal groups. He is pastor of McAllen Grace Brethren Church and the Native American New Life Center. As an active member of the Lipan Apache Tribe of Texas, Robert serves as the second chairman and also serves on the council of the Apache Tribes of South Texas. (See attached Proclamation from the City of McAllen, Proclamation from the City of Falfurrias, Texas State Senate Proclamations 237 and 568, honoring the Lipan Apache, the South Texas Indian Dancer's Association and the Soto family) Robert holds a B.A. in Biblical Education from Florida Bible College and a Master of Divinity, Master of Arts in Christian School Administration for Grace Theological Seminary in Winona Lake, Indiana.[1]

On March 11, 2006, at a pow wow in McAllen, Texas, Special Agent Alejandro Rodriquez (Officer Number 575) of the U.S. Fish and Wildlife Service (USFWS), an agency within the U.S. Department of Interior, raided an American Indian pow wow, where he confronted two pow wow dancers, Rev. Soto and his brother-in-law, Michael V. Russell. Special Agent Rodriguez demanded that they give him two sacred golden eagle feathers that were worn in a ceremonial roach headdress by Rev. Soto, along with Rev. Soto's ceremonial bustle containing 42, forty-year-old, sacred golden eagle feathers which was worn by Mr. Russell with Rev. Soto's permission.

Special Agent Rodriguez asserted that he had the right to confiscate the feathers because (1) Rev. Soto and Mr. Russell did not produce Bureau of Indian Affairs cards indicating that they were enrolled members of a federally recognized Tribe[2] and (2) the pow wow was publicly advertised and, therefore, it was not a religious ceremony.[3]

---

[1] *Ninth Annual United San Antonio Pow Wow,* San Antonio, TX, February 18-19, 2006.

[2] The Lipan Apache Band of Texas, Inc. is one of more than 200 historical tribes currently applying for federal recognition. The Lipan Apaches inhabited and occupied "the area of Southwest Texas and its border with northern Mexico until the 1880's, when Texas became a State and passed laws forbidding Native Americans from living in the new found state. At the time, most of the Lipan Apaches moved to the mountains of Mexico and to several of the reservations in New Mexico and Oklahoma. Yet many of them continued to live in the area by changing their names and attempting to assimilate into the dominant culture.

[3] See attached Affidavits of Robert Soto and Michael V. Russell. Every Saturday, newspapers across Texas advertise Christian religious services within the geography of their respective readership. It is inconceivable that federal agents would consider these services neither religious nor sacred because the services were announced in the local press.

Special Agent Rodriguez also confiscated a dream catcher with a feather of unknown origin from one of the vendors at the pow wow.[4]

Rev. Soto told Special Agent Alejandro Rodriguez that he was violating Rev. Soto's freedom of religion and the freedom of religion of the other dancers and vendors participating in the pow wow by stopping the pow wow and harassing them during their sacred gathering and that Special Agent Rodriguez had no right to come into their pow wow and do whatever he desired. Special Agent Rodriguez continued to insist that by advertising their pow wow in the newspapers and inviting the public to attend the pow wow, the powwow was no longer a sacred event, which gave Special Agent Alejandro Rodriguez the right to come into their pow wow and do whatever he desired.

On four occasions, Rev. Soto asked Special Agent Rodriguez to show him his credentials. In response, Special Agent Rodriguez threatened to arrest Rev. Soto and his brother-in-law, Michael V. Russell, if they did not cooperate with him and relinquish to him Rev. Soto's roach feathers and his bustle. He also threatened that he and his fellow U.S. Fish and Wildlife Services agents would invade every pow wow in Texas to make sure that no participants at the powwows wore sacred feathers without special permission of the federal government.

At that point, Special Agent Rodriguez, seized Rev. Soto's bustle from Michael V. Russell, and he issued to Mr. Russell a U.S. Fish and Wildlife Service United States District Court Violation Notice, charging him with the offense of "Possessing eagle feathers without a permit", 50 CFR 21.11, that included a $500 Forfeiture Amount, plus $25 Processing Fee.

On March 23, 2006, Special Agent Rodriguez confiscated Rev. Soto's two sacred eagle feathers worn in his roach headdress after permitting Rev. Soto the opportunity to bless the feathers.

## II.    REV. ROBERT SOTO'S STATUS AS AMERICAN INDIAN

Federal Law is inconsistent in its recognition of American Indians. Under one federal law, Rev. Soto is recognized and counted as an American Indian, whereas, under another federal law (the law invoked by Special Agent Rodriguez), he is denied such recognition.

**A. The U.S. Decennial Census Definition of American Indian.** In the first instance, the law governing the U.S. Decennial Census has recognized and counted Rev. Soto as an American Indian for more than three decades, along with millions of other American Indians who are not enrolled members of federally recognized tribes. The definition of "American Indian" used by the U.S. Census for this period was derived

---

[4] It is also inconceivable that federal agents would confiscate personal Holy Bibles at such Christian services.

through *self-declaration*. It has evolved and been used in the U.S. Census enumerations since 1960. This *self-declaration* definition treats American Indians for the purposes of the Census the same as other minorities, such as African-Americans, Asians, and Hispanics. According to the 2000 Census,

> The term "American Indian and Alaska Native" refers to people having origins in any of the original peoples of North and South America (including Central America), and who maintain tribal affiliation or community attachment. It includes people who reported "American Indian and Alaska Native" or wrote in their principal or enrolled tribe.[5]

Moreover, *a person could choose more than one race on the 2000 U.S. Census.* As a consequence of this provision, the Texas American Indian population grew from 65,877 in the 1990 U.S. Census to 215,599 in the 2000 U.S. Census, an increase of 330 percent. At the same time, the United States American Indian population more than doubled from 1,959,234 in the 1990 U.S. Census to 4,119,301 in the 2000 U.S. Census.[6]

Nearly 60 percent[7] of those recognized and enumerated as American Indians in the 2000 U.S. Census were *not* enrolled in federally recognized tribes. They were from tribes that have been terminated by the federal government or not granted recognition by the federal government. Others were children, grandchildren, and great-grandchildren of enrolled tribal members, who did not meet the sufficient blood quantum or were the progeny of parents that did not meet the appropriate gender requirements for their children's admission into their respective tribes, whereas others made up a large number of the lost generation of American Indians adopted out during the 1940s-1970s, when extreme poverty in Indian Country combined with high-handed government practices allowed the federal government to remove Indian children from their biological parents and give them to non-Indians to raise as their own. And still, there were other American Indians from Canada and Central and South America who now reside in the United States who can never establish a legal claim as a member of a federally recognized tribe because their ancestral homeland is outside the United States. Their only option to be recognized and counted as an American Indian by the federal government was through the U.S. Census.

**B. A Definition of American Indian as Enrolled in a Federally-Recognized Tribe.** Under this definition, the federal government asserts that one is an American Indian entitled to worship with eagle feathers only if one is enrolled in a federally-recognized tribe and if that person has applied for a permit to possess and use the feathers.[8] The Judge in a case similar to Robert Soto's case, *In the Matter of Joseluis*

---

[5] *The American Indian and Alaska Native Population: 2000*, U.S. Census Bureau, February 2002, p. 2.

[6] In Texas, 118,362 persons indicated that they were "American Indian and Alaska Native alone" and 97,237 persons indicated that they were "Native American and Alaskan Native in combination" with other races.

[7] *According to* "Indian Labor Force Report," Office of Tribal Affairs, Bureau of Indian Affairs, U.S. Department of Interior, 1999, there were 1,698,483 Indians enrolled in federally recognized tribes.

[8] The number of federally recognized tribes has never been static. In 1987, Russell Thornton noted *American Indian Holocaust and Survival: A Population History Since 1492*, University of Okahoma Press,

*Saenz vs. The Department of Interior,*[9] stated that the government's "draconian" use of federal recognition to determine who could worship with eagle fathers conflicted with reality. Moreover, the wordings of the laws-The Migratory Bird Treaty Act and Bald and Golden Eagle Protection Act-made no mention of federal recognition. Instead, the laws simply say, "Indian tribes." He also wrote that the government's use of federal recognition in issuing permits to own eagle feathers was little more than a bureaucratic shortcut. "In the end, (it) appears the present system was designed to minimize the work Congress has handed to the agency . . . Administrative expediency, however, does not constitute a compelling government interest."[10]

The "federal recognition" definition of American Indian is not only the narrowest definition of "American Indian."[11] It is also the most arbitrary and capricious of the definitions of American Indian.

To illustrate, one year a person of full-blood Indian ancestry might be enrolled in a federally recognized tribe. The next year that tribe may no longer have federal recognition, making that full-blood Indian a non-Indian in the Federal Government's eyes. Later on, federal recognition could be reinstated. This happened time and again in the 1950s and 1960s, when the federal government terminated nearly 100 tribes. During the 1970s and 1980s, after prolonged campaigns in the courts and the U.S. Congress by members of the terminated tribes, the federal government decided to reinstate federal recognition of many, but not all, of those previously terminated tribes.

To be an enrolled member of a federally-recognized tribe often requires a validated genealogy to an ancestor on a specified tribal roll established by the federal government, as well as a blood-quantum requirement of "Indian-ness." In addition, a vote by the tribal government may be required in which the tribal government agrees to accept the individual into its tribe.[12]

---

1987, at p. 190, that there were at that time "some 300 federally recognized tribes in the United States." Today, there are approximately 570 federally recognized tribes in the United States. Currently, there are more than 200 American Indian tribes that have petitioned the federal government seeking federal recognition. More than 20 of those tribes already have state recognition. *See* Johnson, Troy, "U.S. Federally Non-Recognized Indian Tribes—Index by State,": http://www.kstrom.net/isk/maps/tribesnonrec.html, accessed 6-12-03.

[9] In the Matter of Joseluis Saenz vs. Department of Interior, U.S. 10th Circuit Court of Appeals, No. 00-2166, Appeal from the U.S District Court in New Mexico, D.C. No. 99-21-M.

[10] *Ibid. Also see* "War on feathers: fruitless drug raid becomes federal holy war," http://www.greatdreams.com/apache-indian-rights-2001.htm.

[11] In addition to the two federal definitions of American Indians discussed herein, there are 69 North American Tribal Entities which are recognized by individual states but not by the U.S. *See* http://en.wikipedia.org/wiki/List_of_State_Recognized_Tribal_Entities, accessed 6-29-06.

[12] At the Winnebago reservation, I witnessed tribal council votes to not admit those who met all the requirements for enrollment, but had been adopted out to non-Indians. One of the arguments to reject their application came from an elder on the council who said, "If their parents didn't want them, then we don't want them either." This was an especially vexing development in light of the efforts of so many tribal members that pushed hard for the passage of Indian Child Welfare Act of 1978.

When it comes to the blood quantum requirement, the many tribes have a wide range of degree of tribal blood required for enrollment in the tribe. One tribe may have a requirement as high as one-half degree of tribal blood born to an enrolled member of the tribe, as with the Duckwater Shoshone Tribe, whereas another tribe may have a requirement so low as to be any amount of Indian blood, no matter how small, with a pedigree to an ancestor on a federal roll, as with the Cherokee Nation of Oklahoma, or it may be a quantum anywhere between the extremes (such as one-quarter, one-eighth, one-sixteenth, and so on).

Historically, tribes have been known to shift blood-quantum requirements to disenroll segments of their respective populations for political purposes. In 2003 at the Isleta Pueblo, tribal leaders decided to raise the blood quantum for tribal enrollment and impose a rigid one-half blood quantum requirement for membership. They informed tribal members already enrolled in the tribe who did not meet the new one-half blood quantum requirement that they would be disenrolled.[13] In 2004 at the Redding Rancheria, the tribal council went ahead and disenrolled one-quarter of its membership. In both the Isleta Pueblo and Redding Rancheria cases disenrollment of tribal members was pushed because of disputes related to the distribution of casino profits.[14]

Then there are those cases in which an applicant for tribal membership that met all the requirements of membership in terms of blood quantum and ancestry as traced to the appropriate roll was not permitted membership in the tribe for a very different political reason, although the reason was oftentimes tied to the scarcity of resources available for those already enrolled members.

For example, in the case of *Santa Clara Pueblo v. Martinez*,[15] the United States Supreme Court upheld the ordinance of a tribe that denied membership to the children of female tribal members who married outside the tribe. In this case Julia Martinez was a full-blood member of the Santa Clara Pueblo, and she resided on the Santa Clara Reservation in Northern New Mexico. She married a full-blood Navajo Indian with whom she had several children.[16] Even though she was a full-blood Indian and member of the tribe, and even though her children grew up on her reservation and were living there at the time of the lawsuit, the Court upheld the tribe's right to deny her children membership because their father was not Santa Claran.

Finally, there are American Indians who decline to participate in the enrollment process to become a member of a federally recognized tribe because of a belief that the Creator makes American Indians, not the federal government. As American Indian activist Leonard Peltier commented:

---

[13] "Isleta Pueblo enforcing blood quantum requirement," *Winnebago Indian News*, December 27, 2003, p. 1.

[14] "Dave Anderson finally sworn in as head of BIA, *Winnebago Indian News*, February 7, 2004, p. 1.

[15] Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978).

[16] *See* Robert N. Clinton, Nell Jessup Newton, and Monroe E. Price, *American Indian Law: Cases and Materials*, Third Edition, Michie Company, Publishers, 1991, p. 85. According to custom, Santa Clara Indians were patrilineal, whereas the Navajos were matrilineal.

> This is not our way. We never determined who our people were through numbers and lists. Those are the rules of our colonizers, imposed for the benefit of our colonizers at our expense. They are meant to divide and weaken us. I will not comply with them.[17]

**II. "Pow wow" as a Sacred Ceremony?** For American Indians, a pow wow is a sacred ceremony. The word "pow wow" itself is rife with religious meaning. It is a European adaptation of the Algonquian term "pau wau" which referred to a tribal holy man, medicine man or spiritual leader.[18] It was later "expanded to mean the entire gathering of tribes and was gradually accepted by the Native Nations as their understanding of English grew . . . (Pow wows) were important gatherings for social and political reasons as well. Individual feats of bravery and outstanding achievements were honored. Betrothals were announced, weddings were performed, births were celebrated and deaths were mourned."[19]

Sacred dances are performed at a pow wow, including:

1. **Gourd Dance.** "The dance occurs before the Grand Entry of a pow wow or as a dance by itself. Only Gourd Dancers may dance the Gourd Dance sessions. The dance is usually held in sets, with about four songs to a set. The purpose of the Gourd Dance is the prepare the dance arena by 'cleansing it' prior to the actual ritual of the pow wow."[20] If there is no Gourd Dance, the "dance circle is blessed with offerings of tobacco and burning sage by a spiritual leader (such as Rev. Robert Soto) prior to every dance session. After the blessing, the circle is considered sanctified. Dancers enter with respect and some say short prayers upon entering to make themselves worthy to be in the circle."[21]

2. **Hoop Dance.** This dance is often performed at pow wows by Rev. Robert Soto. It is "a traditional dance among the Plains Indians, (and it) is a celebration of the annual rebirth of nature that occurs every springtime. The spiritual significance of the dance begins with the hoops themselves, twenty-eight in number, each one representing a day of the lunar cycle. The hoops are symbolic of the 'great hoop of life, where the sky meets the earth, and all the hoops that exist with the sphere.' The 'Hoops of Many Hoops' at the conclusion of the dance represents the sun, the moon, the earth, all light, all

---

[17] Statement by Leonard Peltier to Paulette D'Auteuil Robideou at Leavenworth Federal Prison, June 1991. *See also* Ward Churchill, *Indians Are Us? Culture and Genocide in Native North America*, Common Courage Press, 1994, p. 106.

[18] *Webster's Ninth New Collegiate Dictionary,* Merriam-Webster Inc., Publishers, Springfield, Massachusetts, 1985, p. 923; *Ninth Annual United San Antonio Pow Wow,* San Antonio, TX, February 18-19, 2006.

[19] *Ninth Annual United San Antonio Pow Wow,* San Antonio, TX, February 18-19, 2006.

[20] *Ibid.*

[21] *Pow Wow2006: Indian Country To*day, Four Directions Media, Inc., p. 29.

life, and the human spirit reaching towards the realization that everything is interconnected. It is also the depiction of an old Sioux prophecy that one day in the future al peoples, friends and enemies alike, shall sit down in peace, united in a single great circle by the common bond of their humanity."[22]

3. **Honor Dance.** "This is a special dance to honor an outstanding family, a group, an individual, or an event. Sometimes the singers will give the honoree a special honor song." Pow wow etiquette requires spectators to "stand and remove caps or hats when an honor song is being sung."[23]

4. **Other Dances.** Other dances, such as the Men' Straight, Men's Traditional, Men's Grass, Men's Fancy, Women's Southern Cloth, Women's Buckskin, Women's Fancy Shawl, and Women's Jingle, are performed in a sacred way to celebrate and honor American Indian Culture and Tradition. According to Leroy Seth, a Nez Perce, "When I dance, whether I'm dancing the fancy, traditional, or grass-dance, I turn into another person, or spirit: I am in another world. Some songs make me feel lighter and able to get the natural high. I feel like man things: birds, animals, the wind, grass, and the difference between light and darkness. When I dance it brings me closer to the spirits of my loved ones and makes me feel good."[24] According the Michael Roberts, Choctaw/Chickasaw, "When I am dancing I feel the spirits of past generations. I feel if I dance hard enough, I can somehow help those that are in need. To dance is to feel free. I feel individuality in my style of dance. I give respect to my elders. I bring respect to myself, my family, and all my relations. All my life the arena has been part of me. I honor my family and friends for their help and understanding. I feel it is our responsibility to pass on the teachings of our elders to our children. Let our children not forget the way of our past and our people."[25]

## III. RELIGIOUS SIGNIFICANCE OF AN EAGLE FEATHER

It is difficult to explain the significance of eagles to non-Indians. After the confiscation of his sacred eagle feathers, Rev. Soto told a local television reporter, "It would be like someone telling me I can't worship God; like someone taking the Bible and saying its illegal; like I can't pray, or carry a cross. In many ways, we've been stripped of who we are as native people."[26] In a similar case, the Apache Indian Joseluis Saenz, named *In the Matter of Joseluis Saenz vs. the Department of Interior*, "likened the importance of eagle feathers to the relationship Christians have with the cross . . . however, it might be more accurate to say that there is no equivalent in Christianity to the

---

[22] *Op. Cit., Ninth Annual United San Antonio Pow Wow,* San Antonio, TX, February 18-19, 2006.
[23] *Ibid.*
[24] Marra, Ben, *Powwow: Images Along the Red Road,* Harry N. Abrams, Inc., Publishers., 1996, p. 23.
[25] *Ibid.*, p. 26.
[26] *See* "Eagle feathers confiscated," Thursday, March 30, 2006, Updated: 11:44 AM and file://E:\E-mail\Eagle feathers confiscated-NEWSCHANNEL 5.htm, accessed: 6/21/06.

feather. Nobody needs a government permit to own a cross in America. A cross cannot be seized wantonly from a wall in a person's home (or at a religious service) by law enforcement officers"[27]

An eagle feather is so revered that, if one falls from a dancer's regalia at a pow wow, the pow wow will come to a halt. According to one source, "An eagle feather is sacred. If an Eagle feather should drop from a dancer's regalia, a ceremony must be performed, usually by a veteran or elder. This ceremony varies with different (Indian) Nations, but in general the ceremony needs to be performed to restore (the eagle feather's) medicine. During this ceremony, spectators (are asked to) stand and remove their hats. Picture taking and videotaping (are) strictly forbidden at this time."[28] One can only imagine the trauma and sorrow inflicted on the Indian community when Special Agent Rodriguez so brazenly removed more than forty feathers from dancers and participants at the March 11, 2006 pow wow in McAllen, Texas.

## III. CONCLUSION AND REMEDY SOUGHT

The First Amendment to the U.S. Constitution states that Congress shall make no laws respecting the establishment of religion and prohibiting the free exercise thereof. Time after time, the Federal Government has chosen to ignore this provision when it comes to American Indians. In 1873, a "ban on most Native ceremonial practices including the sweat lodge continued until the 1930s. These laws were actively enforced, and there are many cases of Native people being fined or jailed simply because they took part in a sweat lodge."[29] Joseph Bruchach, an expert on Indian religious ceremonies of Abenaki Indian ancestry, noted that documentation can "be found in the National Archives in Washington, D.C. of case after case in which Native Americans were denied the freedom to publicly congregate, the freedom of speech, and the freedom of worship. Circular No. 1655, dated April 26, 1921, deals with Indian dancing and contains this statement: *The sun-dance and all similar dances and so-called religious ceremonies are considered 'Indian Offenses' under existing regulations and corrective penalties are provided.*[30] (Italics provided)

Bruchac continues: "In order to survive, many Native religious practices had to go underground."[31] As a result of the Civil Rights Movement, enactment of laws such as the Religious Freedom Restoration Act (RFRA),[32] as well as enforcement of the Free Exercise and Equal Protection Clauses of the U.S. Constitution, Indians have opened their pow wows to the public to share with non-Indians the joy, power and beauty of their Native religious ceremonies and culture. In a News Channel 5 broadcast on March 30, 2006, the reporter interviewing Rev. Soto and Special Agent Rodriguez noted the confiscation of Rev. Soto's feathers could turn back the clock on pow wows in Texas.

---

[27] *See* footnotes 7 and 8, above.

[28] *Ibid.*

[29] Bruchac, Joseph, *The Native American Sweat Lodge: History and Legends,* The Crossing Press, Freedom, CA, 1993, p. 28.

[30] *Ibid.,* pp. 27-28.

[31] *Ibid.,* pp. 27.

[32] 42 U.S.C. sections 2000bb-2000bb-4.

According to the reporter: "Until their tribes are recognized, the feathers are off-limits. Native Indians say that means they will be having their pow-wows in secret."[33]

To prevent the tragedy of forcing Texas Indians to go underground to celebrate their Native religion, we are asking that the Federal Government return Rev. Soto's feathers and bustle. Moreover, we are asking the Federal Government to affirm that it shall be the policy of the United States to protect and preserve for *all* American Indians, including those American Indians enrolled in federally recognized tribes, as well as those American Indians not enrolled in federally recognized tribes, their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, including but not limited to access to sites, use and possession of sacred objects (such as eagle feathers), and the freedom to worship through ceremonial and traditional rights.[34]

Thank you for your assistance in this matter.

Respectfully submitted,

Milo Colton
Regional Counsel
District of Columbia Bar Number: 441463
Civil Rights Legal Defense and
Educational Fund

CC: Kevin R. Adams
Chief of Office of Law Enforcement
U.S. Fish and Wildlife Service
1849 C Street North West, Rm. 3020
MS 3238 MIB
Washington, D.C. 20240

Richard McDonald
Special Agent in Charge
Office of Law Enforcement, Region 2
P.O. Box 329
Albuquerque, New Mexico 87103

---

[33] *See* "Eagle feathers confiscated," Thursday, March 30, 2006, Updated: 11:44 AM and file://E:\E-mail\Eagle feathers confiscated-NEWSCHANNEL 5.htm, accessed: 6/21/06.

[34] This language modifies the language of the American Indian Religious Freedom Act of 1978, Pub. L. No. 95-341, 92 Stat. 469, codified at 42 U.S.C. Sec. 1996.

AFFIDAVIT

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

STATE OF TEXAS        )
                          ) SS.
COUNTY OF HIDALGO   )

I, ROBERT SOTO, first being duly sworn under oath, state as follows:

1.     I reside at 1913 Camellia Avenue, McAllen, Texas 78501, Telephone Number (956) 686-5757;

2.     I am a member of the Lipan Apache Band of Texas, Inc.;

3.     I am the founder of a Native American Church Ministry in McAllen and in San Antonio sponsored by McAllen Grace Brethren Church. I am also the founder of the Son Tree Native Path which also sponsors both Native Church services;

4.     In my capacity as a pastor for a Native American Church Ministry, I conduct, minister, and participate in sacred American Indian services and events attended by American Indians and non-Indians, including American Indian powwows;

5.     On March 11, 2006, at a powwow in McAllen, Texas, I wore a roach headdress with two sacred golden eagle feathers, and a member of my family, my brother-in-law Michael V. Russell, wore my ceremonial bustle with 42 sacred golden eagle feathers with my permission, and he and I exercised our freedom of religion by participating as dancers at the powwow in accordance with the Religious Freedom Restoration Act (RFRA), 42 U.S.C. sections 2000bb-2000bb-4, as well as under the Free Exercise and Equal Protection Clauses of the U.S. Constitution;

6.     On March 11, 2006, at a powwow in McAllen, Texas, I was approached by Special Agent Alejandro Rodriquez (Officer Number 575) of the U.S. Fish and Wildlife Service (USFWS), who ordered me and my brother-in-law Michael V. Russell to give him my two sacred golden eagle feathers that were worn in a ceremonial roach headdress by me, along with my ceremonial bustle with 42 sacred golden eagle feathers worn by my brother-in-law with my permission because we did not produce Bureau of Indian Affairs cards indicating that we were enrolled members of a federally recognized Tribe;

7.     On March 11, 2006, at a powwow in McAllen, Texas, I told Special Agent Alejandro Rodriguez that he was violating my freedom of religion and the freedom of religion of the other dancers and vendors participating in the powwow by stopping the powwow and harassing us during our sacred gathering and that he had no right to come into our powwow and do whatever he desired, and I asked him on four occasions to show me his credentials;

**Exhibit A to Woodcock Decl.**

8. On March 11, 2006, at a powwow in McAllen, Texas, Special Agent Alejandro Rodriguez insisted that by advertising our powwow in the newspapers and inviting the public to attend our powwow, the powwow was no longer a sacred event, which gave Special Agent Alejandro Rodriguez the right to come into our powwow and do whatever he desired;

9. On March 11, 2006, at a powwow in McAllen, Texas, Special Agent Alejandro Rodriguez threatened to arrest me and my brother-in-law Michael V. Russell if we did not cooperate with him and relinquish to him my roach feathers and my bustle, and he also threatened that he and his U.S. Fish and Wildlife Services agents would invade every powwow in Texas to make sure that no participants at the powwows wore sacred eagle feathers without special permission of the federal government;

10. On March 11, 2006, at a powwow in McAllen, Texas, Special Agent Alejandro Rodriguez, seized my bustle from my brother-in-law Michael V. Russell and issued to my brother-in-law Michael V. Russell a U.S. Fish and Wildlife Service United States District Court Violation Notice charging him with the offense of "Possessing eagle feathers without a permit", 50 CFR 21.11, that included a $500 Forfeiture Amount, plus $25 Processing Fee; and

11. On March 23, 2006, at an attorney's office, I was afforded the opportunity by Agent Alejandro Rodriquez to bless my two sacred eagle feathers worn in my roach headdress before Agent Alejandro Rodriquez seized them.

[signature]
ROBERT SOTO, AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME BY ROBERT SOTO ON THIS THE 6th DAY OF ~~JUNE~~ July, 2006, in McAllen, Hidalgo, TX
(City, County, State)

[signature]
Notary Public, State of Texas

ELIZABETH CANTU
Notary Public, State of Texas
My Commission Expires 3-26-2010

3-26-10.
Notary's Commission Expires

AFFIDAVIT

STATE OF TEXAS )
) SS.
COUNTY OF HIDALGO )

I, MICHAEL V. RUSSELL (SOCIAL SECURITY NUMBER 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), first being duly sworn under oath, state as follows:

1. I reside at 1702 East 23rd Place, Mission, Texas 78574, and my home telephone number is (956) 583-1112;

2. I am the brother-in-law of Robert Soto, a member of the Lipan Apache Band of Texas, Inc.;

3. On March 11, 2006, at a powwow in McAllen, Texas, I was a dancer who wore a ceremonial bustle made with 42 sacred golden eagle feathers, belonging to my brother-in-law, Mr. Robert Soto, a member of the Lipan Apache Band of Texas;

4. On March 11, 2006, at the powwow in McAllen, Texas, I wore the ceremonial bustle with Mr. Robert Soto's permission, and I exercised my freedom of religion by participating as a dancer at the powwow in accordance with the Religious Freedom Restoration Act (RFRA), 42 U.S.C. sections 2000bb-2000bb-4, as well as under the Free Exercise and Equal Protection Clauses of the U.S. Constitution;

5. On March 11, 2006, at a powwow in McAllen, Texas, I was approached by Special Agent Alejandro Rodriquez (Officer Number 575) of the U.S. Fish and Wildlife Service (USFWS), who confiscated the ceremonial bustle with 42 sacred golden eagle feathers, 2 roach golden eagle feathers, and 2 golden eagle scout feathers belonging to Mr. Robert Soto, when I was unable to produce appropriate identification indicating that I was an enrolled member of a federally recognized Tribe;

6. On March 11, 2006, at a powwow in McAllen, Texas, Special Agent Alejandro Rodriguez of the U.S. Fish and Wildlife Services (USFWS) issued to me a U.S. Fish and Wildlife Service United States District Court Violation Notice charging me with the offense of "Possessing eagle feathers without a permit," 50 CFR 21.11, that included a $500 Forfeiture Amount, plus a $25 Processing Fee; and

**Exhibit A to Woodcock Decl.**

7. On March 23, 2006, I paid the fine via the U.S. Postal Service in the envelope provided to me by Special Agent Alejandro Rodriguez.

MICHAEL V. RUSSELL, AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME BY MICHAEL V. RUSSELL ON THIS THE 26th DAY OF JUNE, 2006, IN HIDALGO COUNTY, TEXAS.

MICHELLE A. NIELSEN
Notary Public, State of Texas
My Commission Expires
May 02, 2010

Notary Public, State of Texas

May 2, 2010
Notary's Commission Expires



City of McAllen

McALLEN
All-America City
1996

# Proclamation

*STATE OF TEXAS*
*COUNTY OF HIDALGO*
*CITY OF MCALLEN*

*WHEREAS*, the Native American tribes (who were the first Texans) have enriched our shared heritage with their culture and traditions, and the historical role of the Lipan Apaches in the State's development is indeed worthy of special praise and recognition; and

*WHEREAS*, many of the Lipan Apaches' families migrated into the Rio Grande Valley Region (primarily McAllen) to start a new life as citizens of Texas. Among those migrating was the Soto Family, direct descendants of the Lipan Apaches of Texas, whom for over 100 years have continued to practice their culture and traditional customs; and

*WHEREAS*, the Soto Family founded the South Texas Indian Dancer's Association over 30 years ago and have played an active role in the community of McAllen, the Rio Grande Valley, and Texas; and

*WHEREAS*, the South Texas Indian Dancer's Association has worked diligently to educate the people of the community in their rich culture by providing presentations at various schools of the Rio Grande Valley. Through these presentations the Association has provided our community with a better understanding of the importance of keeping culture alive through the dances, pow-wows and other social gatherings at the local, national and international levels; and

*WHEREAS*, the South Texas Indian Dancer's Association is committed to educating our community in the areas of arts, crafts and Native American Dancing;

*NOW THEREFORE*, I, Leo Montalvo, Mayor of the City of McAllen, Texas by virtue of the authority vested in me and on behalf of the City Commission do hereby proclaim January 22, 2001 as:

## "South Texas Indian Dancer's Day"

*IN WITNESS WHEREOF*, I have hereunto set my hand and caused the seal of the City of McAllen to be affixed this 22nd day of January 2001.

Leo Montalvo, Mayor

*ATTEST*:

Leticia M. Vacek, CMC
City Secretary

to Woodcock Decl.

# PROCLAMATION

WHEREAS, The lineal descendants of the Native American tribe known as the Lipan Apaches who number more than 2,000 nationally wish to continue sharing its rich and colorful culture with the citizens of Falfurrias, Texas; and

WHEREAS, The City of Falfurrias was named after the Lipan Apache language phrase "Hearts Delights";

WHEREAS, Between the early 1700's through the late 1800's the Lipan Apaches camped among the Live Oaks and green pastures of Falfurrias, Texas; and

WHEREAS, In defense of the Republic of Texas Governor Stephen F. Austin proclaimed that the Lipan Apaches helped Texas by supporting the Texas Revolution in the year 1812; and

WHEREAS, The Lipan Apache Band of Texas signed a treaty with The Republic of Texas on January 8, 1838 at Live Oak Point; and

WHEREAS, In 1839, President Lamar of the Republic of Texas wrote that Lipan Apache Chief Cuelgas de Castro that he was acquainted with his fame as a warrior and diplomat and hoped that relations between Texans and the Lipan would prevail; and

WHEREAS, The Lipan Apaches have figured in more than one colorful incident of Texas history, and their tracking skills and intimate knowledge of the countryside made them invaluable scouts for such legendary frontier figures as the Texas Rangers; and

WHEREAS, The descendants of the Native American tribe known as the Lipan Apaches have returned after more than a 125 years to share its once colorful culture and history with the citizens of Falfurrias, Texas, and

WHEREAS, The South Texas Indian Dancers of McAllen, Texas and the Lipan Apache Band of Texas celebrated the reunion and welcoming home of the Lipan Apaches of Texas on November of the year 2000.

NOW, THEREFORE, I, Raudel Gonzalez, Mayor of the City of Falfurrias, Texas, do hereby proclaim full support of the tradition of the Lipan Apaches and its descendants and welcome the reunion of all Native Americans to Falfurrias, Texas.

**IN WITNESS WHEREOF,** I have hereto set my hand and caused to be affixed the Seal of the City of Falfurrias

Raudel Gonzalez, Mayor

CITY OF FALFURRIAS TEXAS

ATTEST:

Oralia T. Galvan, City Clerk

**Exhibit A to Woodcock Decl.**



# The Senate of The State of Texas

## SENATE PROCLAMATION NO. 237

WHEREAS, The Senate of the State of Texas is pleased to recognize the South Texas Indian Dancers for the many years they have shared their time-honored traditions, their culture, and their music with the people of the Lower Rio Grande Valley and to pay tribute to their founder, Robert Soto; and

WHEREAS, On October 24 and 25, 2003, the dancers are having their 14th Annual South Texas (Way South) Pow Wow at the Palm View Library and Community Center in McAllen; and

WHEREAS, The South Texas Indian Dancers organization was founded by Robert Soto and his family 30 years ago to help preserve the tradition of their ancestors, the Lipan Apache people who once ruled the area; and

WHEREAS, The members of the Soto family are direct descendants of Lipan Apache Chief Poca Ropa, who signed the Lipan Apache Peace Treaty with Mexico on August 17, 1822, to ensure the peace and safety of the people in the Lower Rio Grande Valley; the majority of the members of the South Texas Indian Dancers are members of the Lipan Apache Band of Texas, Incorporated; and

WHEREAS, The Lipan Apaches camped along the banks of the Rio Grande and the green pastures of the Lower Rio Grande Valley from the early 1700s through the late 1800s; and

WHEREAS, The South Texas Indian Dancers have made enormous contributions to the culture and history of the Lower Rio Grande Valley and they deserve recognition for their accomplishments; now, therefore, be it

PROCLAIMED, That the Senate of the State of Texas hereby commend Robert Soto and his family and the South Texas Indian Dancers for sharing their rich culture and heritage with the people of South Texas and extend to them best wishes for a successful 14th Annual South Texas (Way South) Pow Wow; and, be it further

PROCLAIMED, That a copy of this Proclamation be prepared as an expression of high regard from the Texas Senate.

Hinojosa

[signature]
Member, Texas Senate

I hereby certify that the above Proclamation was adopted.

[signature]
Secretary of the Senate

THE SENATE OF TEXAS



# The Senate of The State of Texas

SENATE PROCLAMATION NO. 568

WHEREAS, The Senate of the State of Texas is pleased to join the City of Falfurrias in recognizing the Lipan Apache Band of Texas, Incorporated, on the grand occasion of the second annual November Native American Heritage Month Exhibition POWWOW; and

WHEREAS, Between the early 1700s and the late 1800s, the Lipan Apaches camped among the live oak trees and green pastures of Falfurrias, and the city was named after the Lipan Apache phrase "Hearts Delights"; Stephen F. Austin proclaimed that the Lipan Apaches helped our state by supporting the Texas Revolution in the year of 1836; and

WHEREAS, On January 8, 1838, the Lipan Apache Band of Texas signed a treaty with the Republic of Texas at Live Oak Point, and in 1839, President Lamar wrote to Lipan Apache Chief Cuelgas de Castro that he hoped relations between Texans and the Lipan Apaches would prevail; and

WHEREAS, The Lipan Apaches have taken part in many colorful incidents in Texas history, and their tracking skills and knowledge of the countryside made them invaluable scouts for such legendary frontier figures as the Texas Rangers; and

WHEREAS, The Lipan Apache Band of Texas, Incorporated, is a federal nonprofit Native American organization that serves as a social, spiritual, and cultural center for the more than 2,500 descendants of the Lipan Apaches of Texas; and

WHEREAS, Today, the descendants of the early Native American Lipan Apaches have returned to celebrate the second annual November Native American Heritage Month Exhibition POWWOW and to share the

Exhibit A to Woodcock Decl.

tribe's colorful culture and history with the citizens of Falfurrias; now, therefore, be it

PROCLAIMED, That the Senate of the State of Texas hereby commend the Lipan Apache Band of Texas, Incorporated, on its many accomplishments and its efforts to bring about public awareness of the history and culture of Lipan Apaches; and, be it further

PROCLAIMED, That a copy of this Proclamation be prepared for the Lipan Apache Band of Texas, Incorporated, as an expression of esteem from the Texas Senate.

| | | |
|---|---|---|
| | | Truan |
| Armbrister | Fraser | Shapiro |
| Barrientos | Gallegos | Shapleigh |
| Bernsen | Harris | Sibley |
| Bivins | Jackson | Staples |
| Brown | Lindsay | Van de Putte |
| Cain | Lucio | Wentworth |
| Carona | Madla | West |
| Duncan | Moncrief | Whitmire |
| Ellis | Nelson | Zaffirini |
| | Ogden | |

Ratliff, President of the Senate

Carlos F Truan
Dean of the Senate

I hereby certify that the above Proclamation was adopted.

Betty King
Secretary of the Senate

Exhibit A to Woodcock Decl.



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Tulsa Field Solicitor's Office
7906 East 33rd Street, Suite 100
Tulsa, OK 74145
(918) 669-7730
TELEFAX (918) 669-7736

February 23, 2007

Mr. Milo Colton
Civil Rights Legal Defense & Educational Fund
519 Culebra Rd.
San Antonio, TX 78201

Re: Your clients: Robert Soto and Michael V. Russell

Dear Mr. Colton:

This responds to your letter dated July 4, 2006, mailed to the Office of the Field Solicitor and received on July 10, 2006. Your letter addresses the seizure of one bustle made of Golden Eagle (*Aquila chryaetos*) feathers and six (6) loose Golden Eagle feathers seized by the U.S. Fish and Wildlife Service (FWS) on or about March 11, 2006, from Mr. Soto and Mr. Russell. Your letter is accepted as a Petition for Remission of Forfeiture. We apologize for this delayed response.

On or about March 11, 2006, a Special Agent of the FWS attended a publicly advertised pow wow in McAllen, Texas, sponsored by a group identifying itself as the Lipan Apache Band of Texas, Inc. The Special Agent attended the pow wow after receiving a complaint that non-Native Americans were inappropriately possessing and displaying protected eagle parts and products. The Lipan Apache Band of Texas, Inc., is not a federally recognized Indian tribe. *See* 70 Fed. Reg. 71194 (list of most recent federally recognized Indian tribes). At the pow wow the Special Agent made contact with two individuals wearing eagle feathers who were later identified as Mr. Soto and Mr. Russell. In a conversation between the Special Agent and Mr. Russell, Mr. Russell readily admitted that he was not a Native American. Therefore, the bustle (containing about 44 eagle feathers) and the four other loose golden eagle feathers he was wearing were seized by the Special Agent as being in violation of the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668, 50 C.F.R. § 22.11, and the Migratory Bird Treaty Act, 16 U.S.C. § 703. In conversations with Mr. Soto, Mr. Soto identified himself as a member of the Lipan Apache Tribe of Texas, Inc., and presented the Special Agent with a card issued by the Lipan Apache Tribe of Texas, Inc., which had Mr. Soto's picture on it along with a membership number, name and address. The Special Agent told Mr. Soto the matter would be further investigated but the two loose golden eagle feathers worn by Mr. Soto were not seized at that time. After a couple of days had passed and following some research by the Special Agent, it was determined that the Lipan Apache Tribe of Texas, Inc., was not a federally recognized Native American Indian tribe by the U.S. Bureau of Indian Affairs.

**Exhibit B to Woodcock Decl.**

Thereafter, the Special Agent set up a meeting with Mr. Soto to discuss Mr. Soto's possession of the two golden eagle feathers. Mr. Soto agreed to a meeting on March 16, 2006, and he agreed to bring to the meeting the two loose golden eagle feathers. In the mean time, the Special Agent was contacted on March 15, 2006, by Mr. Arturo Cisneros. Mr. Cisneros identified himself as an attorney representing both Soto and Russell and asked how the entire matter could be amicably resolved. The Special Agent responded that if Mr. Russell agreed to pay a Notice of Violation for $500.00 and both agreed to voluntarily abandon the feathers that each possessed on the day of the pow wow that the pending criminal investigation would be concluded without any further criminal charges being filed. On March 20, 2006, Mr. Cisneros again contacted the Special Agent to notify him that Mr. Russell and Mr. Soto agreed to the Special Agent's proposal. Therefore, on March 23, 2006, the Special Agent, Mr. Cisneros, Mr. Russell, and Mr. Soto met at Cisneros' office where Mr. Soto relinquished possession of the two golden eagle feathers to the Special Agent and both Mr. Soto and Mr. Russell signed voluntary abandonments dated March 23, 2006, of the bustle and the six (6) loose golden eagle feathers. On March 30, 2006, the Central Violations Bureau notified the Special Agent that Mr. Russell had forfeited the $500 as agreed on March 30, 2006.

Subsequent to Mr. Russell's and Mr. Soto's voluntary abandonment of the bustle and six (6) golden eagle feathers, they filed the instant Petition For Remission of Proposed Forfeiture pursuant to 50 C.F.R. § 12.24. The date of the petition is July 4, 2006, and is signed by Mr. Milo Colton, Regional Counsel, Civil Rights Legal Defense & Educational Fund, Inc., in San Antonio, Texas. The petition was mailed directly to the Office of the Field Solicitor for consideration of the petition.

The Petition for Remission of Proposed Forfeiture is filed outside of the time limits established for consideration of such petitions. The voluntary abandonment form (Form 3-2096) signed by both Mr. Soto and Mr. Russell clearly states above the signature line:

> I(we) hereby abandon and quitclaim all of my(our) right, title and interest in and to the above-described property to the United States and waive any further rights or proceedings relative to this property other than my(our) right to file a petition for remission of this property as authorized at 50 C.F.R. 12.24. **I(we) understand that any such petition for remission must be filed prior to the disposal of the property by the Fish and Wildlife service and not later than 60 days from the date of seizure.** (emphasis added).

The instant Petition for Remission is filed more than 60 days from the date the feathers were seized on March 11, 2006 for the bustle and four golden eagle feathers from Mr. Russell and March 23, 2006, for the two golden eagle feathers seized from Mr. Soto. Thus, counting from the date most beneficial for timeliness purposes (March 23, 2006) to the date of the petition (July 4, 2006) the petition is filed some 103 days from the date of seizure and is accordingly, some 43 days outside the time limit for filing such petitions. Because the instant Petition for Remission is untimely I have no jurisdiction to consider the matter and cannot disturb the voluntary abandonment agreed to by the parties. Wherefore, your Petition for Remission is untimely and is hereby DENIED.

The voluntary abandonment of the golden eagle feathers will remain in full force and effect.

**Exhibit B to Woodcock Decl.**

You have the right to file an appeal of this decision by filing a Supplemental Petition for Remission of Forfeiture within 60 days from the date of this decision. The petition should be mailed to the Office of the Field Solicitor, U.S. Department of the Interior, 7906 East 33rd Street, Tulsa, Oklahoma 74145. Your supplemental petition has the effect of requesting a reconsideration of this decision and should be based upon new evidence or materials you may wish to present.

Sincerely yours,

Martin R. Steinmetz
Attorney

cc: Assistant Special Agent in Charge, FWS, Region 2

**The Civil Rights Legal Defense & Educational Fund, Inc.**
519 Culebra Road • San Antonio, Texas 78201 • (210) 334-5209

March 2, 2007




MAR 05 2007
Department of the Interior
FIELD SOLICITOR
Tulsa, Oklahoma

Office of the Field Solicitor
U.S. Solicitor's Office
7906 E. 33d Street, Suite 100
Tulsa, OK 74145

**RE: Supplemental Petition for Remission (Appeal)** of Martin R. Steinmetz' letter dated February 23, 2007, denying Reverend Robert Soto's Petition for Remission of feathers seized by USFWS Special Agent Alejandro Rodriguez on March 11, 2006, at a powwow in McAllen, Texas.

Dear Sir/Madam:

This is a Supplemental Petition for Remission appealing your letter dated February 23, 2007, denying Reverend Robert Soto's Petition for Remission of feathers seized by USFWS Special Agent Alejandro Rodriguez on March 11, 2006, at a powwow in McAllen, Texas, based on the rationale that Rev. Soto's Petition for Remission of feathers was 43 days past a deadline that you set as tolling 60 days after the surrender of the feathers and signing of the Fish and Wildlife Abandonment Forms on March 23, 2006.

Apparently, your decision was based on a letter dated July 4, 2006 supporting our prior Demand Letter dated May 9, 2006 (See your letter, Exhibit One). That letter dated July 4, 2006, does not serve as our Petition for Remission. It is merely a letter supportive of our previous Demand Letter, dated May 9, 2006. Our letter dated May 9, 2006, addressed to the U.S. Department of Interior, et al., serves as our Petition for Remission (See letter to Lynn Scarlett, Secretary of U.S. Department of Interior; RE: *In the Matter of Robert Soto vs. United States Department of Interior: (1) Notice of Representation: and (2)* ***Demand for Return of Eagle Feathers*** **(Exhibit 2)** (Bold Print Provided). Our May 9th letter (Exhibit 2) is well within the 60-day limit. Also, see letter dated June 8, 2006 from Kevin R. Adams, Chief of Office of Law Enforcement for Fish and Wildlife Service, U.S. Department of Interior, in Washington, D.C. Office, wherein he indicates our letter dated May 9, 2006 is being treated as "Mr. Soto's **petition of remission of forfeiture**, which seeks return of those feathers currently being processed by the Regional Field Solicitor in Tulsa, Oklahoma (Exhibit 3) (Bold Print Provided), which I assume is your office.

This is an appeal of Martin R. Steinmetz' letter denying the return of Rev. Soto's sacred feathers, based on his erroneous tolling attached to our letter containing supportive information to our May 9, 2006 Demand Letter which Kevin Adams correctly treated as "Mr. Soto's **petition of remission of forfeiture**" and that you return Rev. Soto's feathers immediately. (Bold Print Provided)

I also want to take this opportunity to inform you that Mr. Soto's sacred feathers will be demanded as evidence in a forthcoming civil action. DO NOT DESTROY, DAMAGE, OR DISPOSE OF REV. SOTO'S SACRED FEATHERS!

Sincerely,

Milo Lone-Eagle Colton, Esq.
Regional Counsel

Marisa Y. Salazar, Esq.
Regional Counsel

cc: Alberto Gonzalez
U.S. Attorney General
U.S. Department of Justice

Lynn Scarlett
Secretary of U.S. Department of Interior
U.S. Department of Interior

H. Dale Hall, Director
U.S. Fish and Wildlife Services

Dr. Benjamin Tuggle
Acting Regional Director, Region 2
U.S. Fish and Wildlife Services

Elinor Colbourn
Chief Trial Counsel
Environmental Division
U.S. Department of Justice

Steven Schammel
Assistant U.S. Attorney
Mc Allen, Texas

Alejandro Rodriguez
Special Agent
U.S. Fish and Wildlife

**Exhibit C to Woodcock Decl.**

United States Department of the Interior

OFFICE OF THE SOLICITOR
Tulsa Field Solicitor's Office
7906 East 33rd Street, Suite 100
Tulsa, OK 74145
(918) 669-7730
TELEFAX (918) 669-7736

February 23, 2007

Mr. Milo Colton
Civil Rights Legal Defense & Educational Fund
519 Culebra Rd.
San Antonio, TX 78201

Re: Your clients: Robert Soto and Michael V. Russell

Dear Mr. Colton:

This responds to your letter dated July 4, 2006, mailed to the Office of the Field Solicitor and received on July 10, 2006. Your letter addresses the seizure of one bustle made of Golden Eagle (*Aquila chryaetos*) feathers and six (6) loose Golden Eagle feathers seized by the U.S. Fish and Wildlife Service (FWS) on or about March 11, 2006, from Mr. Soto and Mr. Russell. Your letter is accepted as a Petition for Remission of Forfeiture. We apologize for this delayed response.

On or about March 11, 2006, a Special Agent of the FWS attended a publicly advertised pow wow in McAllen, Texas, sponsored by a group identifying itself as the Lipan Apache Band of Texas, Inc. The Special Agent attended the pow wow after receiving a complaint that non-Native Americans were inappropriately possessing and displaying protected eagle parts and products. The Lipan Apache Band of Texas, Inc., is not a federally recognized Indian tribe. *See* 70 Fed. Reg. 71194 (list of most recent federally recognized Indian tribes). At the pow wow the Special Agent made contact with two individuals wearing eagle feathers who were later identified as Mr. Soto and Mr. Russell. In a conversation between the Special Agent and Mr. Russell, Mr. Russell readily admitted that he was not a Native American. Therefore, the bustle (containing about 44 eagle feathers) and the four other loose golden eagle feathers he was wearing were seized by the Special Agent as being in violation of the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668, 50 C.F.R. § 22.11, and the Migratory Bird Treaty Act, 16 U.S.C. § 703. In conversations with Mr. Soto, Mr. Soto identified himself as a member of the Lipan Apache Tribe of Texas, Inc., and presented the Special Agent with a card issued by the Lipan Apache Tribe of Texas, Inc., which had Mr. Soto's picture on it along with a membership number, name and address. The Special Agent told Mr. Soto the matter would be further investigated but the two loose golden eagle feathers worn by Mr. Soto were not seized at that time. After a couple of days had passed and following some research by the Special Agent, it was determined that the Lipan Apache Tribe of Texas, Inc., was not a federally recognized Native American Indian tribe by the U.S. Bureau of Indian Affairs.

**EXHIBIT 1** **Exhibit C to Woodcock Decl.**

Thereafter, the Special Agent set up a meeting with Mr. Soto to discuss Mr. Soto's possession of the two golden eagle feathers. Mr. Soto agreed to a meeting on March 16, 2006, and he agreed to bring to the meeting the two loose golden eagle feathers. In the mean time, the Special Agent was contacted on March 15, 2006, by Mr. Arturo Cisneros. Mr. Cisneros identified himself as an attorney representing both Soto and Russell and asked how the entire matter could be amicably resolved. The Special Agent responded that if Mr. Russell agreed to pay a Notice of Violation for $500.00 and both agreed to voluntarily abandon the feathers that each possessed on the day of the pow wow that the pending criminal investigation would be concluded without any further criminal charges being filed. On March 20, 2006, Mr. Cisneros again contacted the Special Agent to notify him that Mr. Russell and Mr. Soto agreed to the Special Agent's proposal. Therefore, on March 23, 2006, the Special Agent, Mr. Cisneros, Mr. Russell, and Mr. Soto met at Cisneros' office where Mr. Soto relinquished possession of the two golden eagle feathers to the Special Agent and both Mr. Soto and Mr. Russell signed voluntary abandonments dated March 23, 2006, of the bustle and the six (6) loose golden eagle feathers. On March 30, 2006, the Central Violations Bureau notified the Special Agent that Mr. Russell had forfeited the $500 as agreed on March 30, 2006.

Subsequent to Mr. Russell's and Mr. Soto's voluntary abandonment of the bustle and six (6) golden eagle feathers, they filed the instant Petition For Remission of Proposed Forfeiture pursuant to 50 C.F.R. § 12.24. The date of the petition is July 4, 2006, and is signed by Mr. Milo Colton, Regional Counsel, Civil Rights Legal Defense & Educational Fund, Inc., in San Antonio, Texas. The petition was mailed directly to the Office of the Field Solicitor for consideration of the petition.

The Petition for Remission of Proposed Forfeiture is filed outside of the time limits established for consideration of such petitions. The voluntary abandonment form (Form 3-2096) signed by both Mr. Soto and Mr. Russell clearly states above the signature line:

> I(we) hereby abandon and quitclaim all of my(our) right, title and interest in and to the above-described property to the United States and waive any further rights or proceedings relative to this property other than my(our) right to file a petition for remission of this property as authorized at 50 C.F.R. 12.24. **I(we) understand that any such petition for remission must be filed prior to the disposal of the property by the Fish and Wildlife service and not later than 60 days from the date of seizure.** (emphasis added).

The instant Petition for Remission is filed more than 60 days from the date the feathers were seized on March 11, 2006 for the bustle and four golden eagle feathers from Mr. Russell and March 23, 2006, for the two golden eagle feathers seized from Mr. Soto. Thus, counting from the date most beneficial for timeliness purposes (March 23, 2006) to the date of the petition (July 4, 2006) the petition is filed some 103 days from the date of seizure and is accordingly, some 43 days outside the time limit for filing such petitions. Because the instant Petition for Remission is untimely I have no jurisdiction to consider the matter and cannot disturb the voluntary abandonment agreed to by the parties. Wherefore, your Petition for Remission is untimely and is hereby DENIED.

The voluntary abandonment of the golden eagle feathers will remain in full force and effect.

You have the right to file an appeal of this decision by filing a Supplemental Petition for Remission of Forfeiture within 60 days from the date of this decision. The petition should be mailed to the Office of the Field Solicitor, U.S. Department of the Interior, 7906 East 33rd Street, Tulsa, Oklahoma 74145. Your supplemental petition has the effect of requesting a reconsideration of this decision and should be based upon new evidence or materials you may wish to present.

Sincerely yours,

Martin R. Steinmetz
Attorney

cc: Assistant Special Agent in Charge, FWS, Region 2

 **The Civil Rights Legal Defense & Educational Fund, Inc.**
519 Culebra Road • San Antonio, Texas 78201 • (210) 334-5209

May 9, 2006

Benjamin Tuggle
Region 2 Acting Regional Director
U.S. Fish and Wildlife Service
500 Gold Ave., SW
Albuquerque, NM 87102

RE: ***In the Matter of Robert Soto vs. United States Department of Interior:***
**(1) Notice of Representation; and**
**(2) Demand for Return of Eagle Feathers.**

Dear Region 2 Acting Regional Director Tuggle:

(1) This letter is official notification of the Civil Rights Legal Defense and Educational Fund, Inc.'s (CRLDEF) legal representation of Mr. Robert Soto. Any desired contact with Mr. Soto should occur through CRLDEF at the following contact information:

Milo Colton, Regional Counsel
Civil Rights Legal Defense and Educational Fund, Inc.
519 Culebra Road
San Antonio, Texas 78201
(210) 334-5209

Marisa Salazar, Executive Director
Civil Rights Legal Defense and Educational Fund, Inc.
519 Culebra Road
San Antonio, Texas 78201
(210) 334-5209

(2) This is also a demand for the return of Mr. Robert Soto's eagle feathers. On or about March 11, 2006, at a powwow in Mc Allen, Texas, Special Agent Alejandro Rodriguez of the U.S. Fish and Wildlife Services (USFWS), confiscated eagle feathers belonging to Mr. Robert Soto, a member of the Lipan Apache Band of Texas. Specifically, Special Agent Rodriguez seized (1) two golden eagle feathers worn in a ceremonial roach by Mr. Soto; and (2) a ceremonial dance bustle of 42 golden eagle feathers also belonging to Mr. Soto and worn with Mr. Soto's permission by his brother-in-law Michael Russell, a dancer at the powwow.

| ATTACH | 1 |
|---|---|
| PAGE | 1 of 4 |

**EXHIBIT 2**

**Exhibit C to Woodcock Decl.**

In a similar case, *In the Matter of: JOSELUIS SAENZ vs. DEPARTMENT OF INTERIOR* (D.C. No. 99-21-M and US 10TH Circuit Court No. 00-2166), a federal judge ordered the USFWS to return eagle feathers to the plaintiff, Mr. Saenz, pending the outcome of the case. We are seeking the same consideration for Mr. Robert Soto. Please return Mr. Soto's eagle feathers on or before June 30, 2006. Thank you for your timely attention to this important matter.

Respectfully submitted,

Milo Colton
Regional Counsel
District of Columbia Bar Number: 441463
Civil Rights Legal Defense and
Educational Fund, Inc.

Marisa Salazar
Executive Director
Civil Rights Legal Defense and
Educational Fund, Inc.

cc: Lynn Scarlett
Secretary of U.S. Department of Interior
U.S. Department of Interior

Alberto Gonzalez
U.S. Attorney General
U.S. Department of Justice

H. Dale Hall, Director
U.S. Fish and Wildlife Services

Alejandro Rodriguez
Special Agent
U.S. Fish and Wildlife

Robert Soto, Lipan Apache
Lipan Apache Band of Texas



# United States Department of the Interior

FISH AND WILDLIFE SERVICE
Washington, D.C. 20240

JUN 08 2006

IN REPLY REFER TO:
FWS/LE DCN 025636

Mr. Milo Colton
Civil Rights Legal Defense and Educational Fund, Inc.
519 Culebra Road
San Antonio, Texas 78201

Dear Mr. Colton:

Secretary Kempthorne has asked us to respond to your letter of May 9, 2006, regarding the U.S. Fish and Wildlife Service's (Service) confiscation of a ceremonial roach and bustle containing golden eagle feathers that belonged to Mr. Robert Soto.

The roach and bustle were in the possession of Mr. Michael Russell at the time of the confiscation. On March 23, 2006, Mr. Russell and Mr. Soto acknowledged unlawful possession of the golden eagle feathers. The feathers were then voluntarily abandoned to the government in Mr. Soto's presence.

Mr. Soto's petition for remission of forfeiture, which seeks the return of those feathers, is currently being processed by the Regional Field Solicitor in Tulsa, Oklahoma. Under Service regulations (50 CFR 12.24(e)), this process requires the Solicitor to decide whether or not to grant Mr. Soto's request for return of the feathers based upon information provided by Mr. Soto as well as other available information about the matter, such as our investigative reports. The Solicitor will notify Mr. Soto in writing of his decision.

We hope this information proves useful to you. If you have additional questions about this matter, please contact Special Agent in Charge Richard McDonald, who oversees our enforcement operations in the Southwest, at (505) 248-7889.

Sincerely,

K Adams

Kevin R. Adams
Chief, Office of Law Enforcement

-8-

ATTACH 2
PAGE 1 of 1

**EXHIBIT 3** **Exhibit C to Woodcock Decl.**

Copy for R. McDonald

**The Civil Rights Legal Defense & Educational Fund, Inc.**
519 Culebra Road • San Antonio, Texas 78201 • (210) 334-5209

June 16, 2006

Kevin R. Adams
Chief of Office of law Enforcement
U.S Fish and Wildlife Service
1849 C Street North West, Rm. 3020
MS 3238 MIB
Washington, D.C. 20240

RE: ***In the Matter of Robert Soto vs. United States Department of Interior***
**50 CFR 12.24(e) Requirement to Consider Information from Mr. Soto in USFWS Decision**

Dear Chief Adams:

Based on your letter of June 8, 2006 addressed to Milo Colton, the USFWS' facts concerning the confiscation of Mr. Robert Soto's feathers are incorrect and incomplete, as they lack essential and critical facts. In order to remedy this deficiency, and pursuant to 50 CFR 12.24(e), affidavits by Mr. Robert Soto and Mr. Michael Russell, as well as additional relevant material, will be submitted to the Solicitor's Office by us in the near future. Thank you for your assistance in this matter.

Sincerely,

Marisa Salazar

Marisa Salazar
Executive Director
Civil Rights Legal Defense and
Educational Fund, Inc.

cc: Richard Mc Donald
Special Agent in Charge
Office of Law Enforcement Region 2
P.O. Box 329
Albuquerque, New Mexico 87103

Martin Steinmetz
Regional Solicitor
U.S. Solicitor's Office
7906 East 33rd Street, Ste. 100
Tulsa, OK 74145

ATTACH 3
PAGE 1 of 1

-9*

**EXHIBIT 4**

**Exhibit C to Woodcock Decl.**