IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MCALLEN GRACE BRETHREN CHURCH, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KEN SALAZAR, Secretary of the )<br>Department of the Interior, )<br>)<br>Defendant. ) | Case No. 7:07-cv-60 |

## AFFIDAVIT OF PRESTON FANT

I, Preston Fant, state as follows:

1. I have been a Special Agent with the United States Fish and Wildlife Service (USFWS) since 2001 and have been stationed in Flagstaff, Arizona since September 2002. Prior to employment with the USFWS, I was employed for eight years with the Florida Game and Freshwater Fish Commission, which later became the Florida Fish and Wildlife Conservation Commission, in the capacities of wildlife reserve officer, wildlife officer, and investigator. As a Special Agent of the USFWS, I have received specialized training in the enforcement of, and investigations conducted under the authority of, federal wildlife protection statutes and regulations, as well as criminal investigative training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have received training and have experience in the identification of migratory birds and their feathers. I also have a Bachelor of Arts Degree in Criminal Justice with a minor in Psychology from the University of West Florida.

2. I have served as an instructor for American Indian Issues and the Bald and Golden Eagle Protection Act (BGEPA) at the USFWS Special Agent Basic School in Glynco, Georgia. I have also provided training to state conservation officers in the enforcement of the BGEPA and provided training to the Native American Fish & Wildlife Society's Southwest Region on "Cooperative Enforcement of Federal Wildlife Laws in Indian Country."

3. A large portion of my duties include enforcing the BGEPA, Lacey Act, and Migratory Bird Treaty Act (MBTA); and working in Indian country. I have investigated numerous cases involving the possession, purchase, sale, and take (capture, kill, poison, shoot) of bald and golden eagles as well as other federally listed migratory birds. Many of these investigations began at the behest of tribal wildlife officials or concerned tribal members and have involved both tribal and non-tribal member defendants.

4. My case work has included an investigation of both American Indians who were members of federally recognized American Indian tribes and other people who were trafficking in eagle and other migratory bird feathers. As this investigation grew it spread across the United States and as far as Canada and France. The investigation revealed extensive killing and commercial trade in eagles and other migratory birds for their feathers.

5. I have read the affidavit of USFWS Special Agent Kevin Ellis dated June 13, 2003, and the affidavit of retired USFWS Special Agent Lucinda Schroeder dated June 16, 2003. I have had many of the same experiences and concur with their analyses of the black market trade in eagle feathers/parts and those of other federally listed migratory birds. I also concur with the detrimental impact on wild eagles, other wild migratory birds, and efforts to protect them if the number of people who can legally possess the wild birds or their parts is widely expanded.

6. The prohibition on the possession of eagle and other federally listed migratory birds is an essential enforcement tool. When people know they are not allowed to even have migratory birds or their parts, whether it be a live bird in a cage or the feathers to adorn a handicraft, it serves as a deterrent to killing the birds or having dead birds or bird parts, thus reducing the number of violations committed and helping conserve the species. However, when the deterrent against killing, injuring, or engaging in commercial dealings with the wild birds is not enough, the prohibition on possession can be enforced because it is easier to prove. For example, while stationed in Colorado in 2002 I worked a case where a whole hawk was found in a freezer. I traced the source of the hawk back to a non-Indian taxidermist who "found" it under a power or telephone pole while he was pheasant hunting. The subject denied shooting the hawk. I had the hawk x-rayed and it was full of bird shot. I issued a federal violation notice under the authority of the MBTA for possession of a migratory bird without a permit, the forfeiture of collateral was paid, and the case was closed. In this case I did not have the evidence to prove the taxidermist shot the bird, but I was still able provide an incentive against his engaging in similar actions in the future, whether it was shooting the hawk or doing business with the person who shot the hawk. If individuals, such as those with claimed American Indian ancestry, were to become exempt from BGEPA and MBTA enforcement, this essential law enforcement tool would be severely weakened.

7. Based on my experience working with the USFWS's National Eagle Repository, working with tribes and tribal members, and investigating the black market feather trade, the demand for eagles and their parts is already greater than can be met by the National Eagle Repository. If individuals other than American Indians enrolled in federally recognized Indian Tribes become exempt from enforcement of the "prohibition of possession" portions of the BGEPA and MBTA, the number of requests to the National Eagle Repository for eagles and their parts, and the demand for federally protected migratory birds and their parts will both certainly increase. My belief that the demand will increase is based on interviews and other work experiences that have shown there is a demand for eagle and other migratory bird feathers by individuals who are not members of federally recognized American Indian tribes, including those who claim American Indian ancestry and those who do not. As a result, the American Indians in federally recognized tribes, for whom the program is intended, will experience further delays in receiving eagle feathers.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2012, at Flagstaff, AZ.

_____
Preston Fant

Ex. 3 -- Def's MSJ