UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MC ALLEN DIVISION

| | |
|---|---|
| MC ALLEN GRACE BRETHREN CHURCH, ) | CASE NO: 7:07-CV-60 |
| ET AL., ) | |
| ) | CIVIL |
| Plaintiffs, ) | |
| ) | McAllen, Texas |
| vs. ) | |
| ) | Thursday, February 21, 2013 |
| ALBERTO GONZALEZ, ET AL., ) | |
| ) | (5:21 p.m. to 5:54 p.m.) |
| Defendants. ) | |

HEARING ON MOTION FOR SUMMARY JUDGMENT

BEFORE THE HONORABLE RICARDO H. HINOJOSA,
CHIEF UNITED STATES DISTRICT JUDGE

**Appearances**:              See next page

Court Recorder:              Antonio E. Tijerina

Transcribed By:              Exceptional Reporting Services, Inc.
                             P.O. Box 18668
                             Corpus Christi, Texas 78480-8668
                             361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**


Plaintiffs:                    MARISA Y. SALAZAR, ESQ.
                               MILO COLTON, ESQ.
                               Civil Rights Legal Defense
                               Ed Fund, Inc.
                               519 Culebra Rd.
                               San Antonio, TX 78201

Defendants:                    JIMMY A. RODRIGUEZ, ESQ.
                               1000 Louisiana, Suite 2300
                               Houston, TX 77002

1      **McAllen, Texas; Thursday, February 21, 2013; 5:21 p.m.**

2                    **(Call to Order)**

3          **THE COURT:**  M-07-60, *McAllen Grace Brethren Church*

4  *and others versus Secretary of the U.S. Department of the*

5  *Interior, Ken Salazar in its official capacity.*

6          Can we have announcements for the parties as to who

7  is here?

8          **MS. SALAZAR:**  Marisa Salazar for the Plaintiffs, your

9  Honor, with the Civil Rights Legal Defense and Educational

10  Fund.

11          **MR. COLTON:**  Milo Colton with the same group and

12  Mr. Soto -- Rev. Soto.

13          **MR. RODRIGUEZ:**  Jimmy Rodriguez here on behalf of the

14  Defendant, your Honor.

15          **THE COURT:**  Okay.  In this particular case, we

16  obviously have numerous Plaintiffs here.  Some are individuals.

17  One is the McAllen Grace Brethren Church and then we have

18  Native American New Life Center, San Antonio Indian Fellowship,

19  South Texas Indian Dance -- Dancer's Association that seem to

20  be unincorporated associations who, really, I don't think have

21  any standing or a claim here.  Although, I can see how the

22  McAllen Grace Brethren Church, that is an incorporated church;

23  is that correct?

24          **MS. SALAZAR:**  Yes, your Honor.

25          **THE COURT:**  Okay.  And then the individuals, they're

4

1    individuals, obviously.  But then we have these three entities

2    that are not incorporated and, therefore, they don't have

3    standing because they're not individuals.  But the church

4    becomes an individual because of the fact that it's

5    incorporated.  The others are just entities that really don't

6    have standing here.  I -- I don't know what they are.

7            **MS. SALAZAR:**  Your Honor, they're -- the American New

8    Life Center I believe is a church?

9            **MR. COLTON:**  It's a church under the church.

10           **THE COURT:**  Right.  But they're just subsidiaries of

11   the church, but they're not really individual corporations.

12           **MR. RODRIGUEZ:**  Your Honor, if I may?  I believe

13   Mr. Soto filed a Petition for Remission and then Supplemental

14   Petition for Remission asking that the feathers be returned to

15   him.  That Petition was filed on his behalf.

16           **THE COURT:**  Right.

17           **MR. RODRIGUEZ:**  So I believe he is the person that

18   has standing to challenge the -- the denial of his request that

19   the feathers be returned.  My understanding is the other

20   Plaintiff --

21           **THE COURT:**  Well, actually, didn't Mr. Michael

22   Cleveland and Michael Russel also have feathers?

23           **MR. RODRIGUEZ:**  That's correct but Mr. Russel did not

24   request that any feathers be returned.  He simply paid the

25   fine.  Mr. Cleveland, yes, your Honor, was part of the criminal

1    conviction and we addressed that in our brief.  But -- but what

2    I was going to get at, I believe that the overarching legal

3    issues presented with regard to Mr. Soto's case encompasses all

4    the claims that Plaintiffs are attempting to present in this

5    lawsuit.  I -- I realize that doesn't go to standing.

6           **THE COURT:**  Well, because we have all these claims of

7    different causes of action here, which I -- I'm going to assume

8    have been abandoned because the Plaintiff has just proceeded on

9    a limited number of these.  But the Petition, itself, where the

10   Plaintiffs asserted violations of the <u>Religious Freedom</u>

11   <u>Restoration Act</u>, RFRA, which is still pending, violations of

12   the First Amendment of the Constitution which is part of the

13   RFRA claim, violations of the equal protection clause of the

14   Constitution but there's no allegations in that Motion for

15   Summary Judgment on that, improper application to the <u>Migratory</u>

16   <u>Bird Treaty Act</u> and the <u>Bald and Golden Eagle Protection Act</u>,

17   that's alleged as part of the RFRA claim and the First

18   Amendment claim and violations of the Fifth Amendment and due

19   process clause which is not addressed in the Summary Judgment

20   Motion, and violations of the <u>Administrative Procedure Act</u> and

21   violations of international law.  Are -- is that even part of

22   this claim here?

23          **MR. RODRIGUEZ:**  Not that I'm aware of, your Honor.

24          **THE COURT:**  Those were all parts of the Petition

25   but --

1          **MS. SALAZAR:**  Correct.

2          **THE COURT:**  But abandoned.  And I just want to

3     clarify that what's left here is what you're claiming in your

4     Motion for Summary Judgment.

5          **MS. SALAZAR:**  Yes, your Honor.

6          **THE COURT:**  That there is a RFRA violation with

7     regards to the application of the Migratory Bird Treaty Act as

8     with regards to Mr. Cleveland and the Bald and Golden Eagle

9     Protection Act as regards to whatever the other parties are,

10    whoever the other parties are except these entities that I've

11    indicated are not individuals.

12         **MS. SALAZAR:**  Your Honor, we believe that the --

13    those Plaintiffs have standing because they're -- it's --

14    they're religiously affiliated organizations and, therefore,

15    all -- all the members of those organizations regularly attend

16    Indian -- Native American services where feathers are used.

17         **THE COURT:**  Well, at McAllen Grace Brethren Church,

18    they're -- it's all parts of the McAllen Grace Brethren Church.

19         **MS. SALAZAR:**  Are they all parts of them?  That is --

20         **THE COURT:**  So, therefore, they're covered with

21    McAllen -- they're just like organizations within the church

22    and so, therefore, not independent corporations and so,

23    therefore, as far as I'm concerned those associations or groups

24    within the church don't -- the church has standing but not

25    them.  I did -- well, it really doesn't make any much of a

7

1    difference here --

2            **MS. SALAZAR:**  I --

3            **THE COURT:**  -- as to how we -- add as is in the end

4    -- the standard here.

5            **MS. SALAZAR:**  I under -- I understand what you're

6    saying.

7            **THE COURT:**  Okay.  With regards to the individual who

8    actually has the conviction, under the _Hect_ decision, it would

9    appear that we no longer have that possibility here because

10   that conviction has been affirmed; isn't that correct?

11           **MS. SALAZAR:**  It has been a -- affirmed, your Honor.

12   That person, though, is --

13           **THE COURT:**  That's with regards to Mr. Cleveland's

14   claims with regards to the Migratory Bird Act.

15           **MS. SALAZAR:**  Yes.

16           **THE COURT:**  Under _Hect versus Humphrey_ and the fact

17   that we have a -- an -- an appeal and it's been affirmed and

18   the conviction has been affirmed, it's the Court's ruling that

19   he no longer has a claim under the Migratory Bird Act and to

20   the extent that the defense here is arguing summary judgment on

21   that claim, the Court's going to grant it.  That leaves the

22   other claims under RFRA and violations of the Eagle Protection

23   Act.  As we all know, these pretty much have been addressed in

24   _U.S. versus Wilgus_, 638 F.3d 1274, 10th Circuit 2011.  The

25   Plaintiffs, if you want to say something here.  Now is the time

1 to say it.

2          **MS. SALAZAR:**  Yes, your Honor.  Absolutely.

3 *Wilgus* -- the *Wilgus* case is absolutely different from the

4 Soto -- the McAllen Grace Brethren, et al. case because in the

5 *Wilgus* case, you have an Indian that was -- sorry.  It's -- you

6 actually have a non-Indian claiming the rights to use the

7 feathers.  In this case --

8          **THE COURT:**  But the government's response to that is

9 going to be here we have -- we have individuals in a corporate

10 -- in a church that are not federally recognized American

11 Indian tribal members.

12          **MS. SALAZAR:**  Correct.  Which would be the exact

13 scenario that occurred in the *Jose Luis Saenz* case which was

14 decided in favor of the American Indian claiming the right to

15 use these feathers.

16          **THE COURT:**  Did you want to respond to that one?

17          **MR. RODRIGUEZ:**  Well, just briefly, your Honor.  In

18 addition to *Wilgus*, we cite the -- the *Antoine* (phonetic)

19 decision that Judge Kazinsky wrote out of the 9th Circuit, the

20 *Gibson* decision out of the 11th Circuit and the *U.S. v. Wind*

21 *Dancer* decision out of the Western District of Tennessee.  In

22 all those cases, the complainant was a person like Mr. Soto of

23 Native American ancestry but not a member of a federally

24 recognized tribe and the Court, of course, so ruled in the

25 government's favor.

1        **THE COURT:**  The Court ruled that that is the list --

2  least restrictive means and that there is a particular reason

3  why that is required under the statute and that that did not

4  violate RFRA.

5        **MR. RODRIGUEZ:**  Yes, your Honor.

6        **THE COURT:**  And how do we get around those cases?

7        **MR. RODRIGUEZ:**  And -- and just briefly with regard

8  to Mr. Saenz, in that case, that was vacated by the 10th

9  Circuit and the 10th Circuit has, of course, issued the *Wilgus*

10  decision which is controlling in the 10th Circuit.

11        **THE COURT:**  Right.  And so their -- their case was at

12  the District Court level but vacated and the *Wilgus* case is

13  actually what controls the 10th Circuit case law and so their

14  case is really no longer a case.

15        **MR. RODRIGUEZ:**  Correct, your Honor.

16        **THE COURT:**  A case that's recognized by the Circuit

17  Court as a decision.

18        **MS. SALAZAR:**  Your Honor, that's actually technically

19  correct but legally incorrect.  I looked up that assertion.

20        **THE COURT:**  But when a -- when a case is vacated,

21  that means it's not -- doesn't have any value.

22        **MS. SALAZAR:**  Well --

23        **THE COURT:**  Especially when the Circuit has ruled to

24  the contrary since then.

25        **MS. SALAZAR:**  It was -- the panel decision was

1    vacated on three -- each of three cases so that the attorneys

2    could brief and prepare a specific list of topics and then all

3    those cases were heard together and decided for the final

4    outcome.  And the final outcome was in favor of Jose Luis Saenz

5    so there -- the vacation was not the ultimate decision on the

6    Jose Luis Saenz case.  It was only temporary.

7        **MR. RODRIGUEZ:**  It -- it's -- it's confusing, your

8    Honor.  And -- and -- and -- and her technical description is

9    correct.  So, there was the *Saenz* decision from the -- from the

10   10th Circuit.  The 10th Circuit had several eagle feather cases

11   going on at the same time and -- and so they -- they took three

12   of them, I believe, and -- and -- and heard then en banc in the

13   *Hartman* case.  And when they did that, they vacated the *Saenz*

14   decision.  So, of -- of course, Plaintiffs cannot cite the

15   decision in any argument that was made or discussion in that

16   panel opinion as authority because it was vacated.

17       **THE COURT:**  Yeah, but she's saying that in the end,

18   he still won.

19       **MR. RODRIGUEZ:**  At the -- in the *Hartman* decision,

20   they say *Saenz*, that there was no evidence presented at the

21   lower court explaining what the compelling government interest

22   was as it related to Mr. Saenz or in his case so the record was

23   insufficient in that case and so Mr. Saenz won.  And then

24   later --

25       **THE COURT:**  But not -- not based on the legal

1    findings of the original decision.

2            **MR. RODRIGUEZ:**  Exactly, your Honor.  And then --

3            **THE COURT:**  But rather because the -- the --

4            **MR. RODRIGUEZ:**  The inadequacy of the record.

5            **THE COURT:**  -- the interest what did -- the

6    information and the evidence that would have to be presented in

7    order to uphold the restriction.

8            **MS. SALAZAR:**  Your Honor?

9            **THE COURT:**  There was no evidence.

10           **MR. RODRIGUEZ:**  Yes, your Honor.  And then, of

11   course, the 10th Circuit has most recently issued the *Wilgus*

12   decision which our contention is, has --

13           **THE COURT:**  Very recent.  Very recently.

14           **MR. RODRIGUEZ:**  Has -- has -- has superseded all --

15           **THE COURT:**  And talks about the *Hartman* decision.

16           **MR. RODRIGUEZ:**  Exactly.  And so, that is -- is -- is

17   the law that we're asking the Court to apply.

18           **THE COURT:**  Right.

19           **MS. SALAZAR:**  That's not a correct description, your

20   Honor, respectfully disagreeing.  The specific reasoning for

21   the different outcomes he -- opposing counsel explained that

22   the record was not well developed by the government so the case

23   was remanded.  However, that is true, but that only applied to

24   two -- there were three cases that were pulled together to be

25   heard.  Two of them were returned because the record was not

12

1   well developed.  That was the *Hartman* and the *Wilgus* case.  The

2   -- the third case, the *Jose Luis Saenz* case, however, was

3   decided by the Court of Appeals finding that the record was

4   well developed and they could make a decision which they made

5   in -- in favor of *Jose Luis Saenz* saying that the government's

6   interests were not compelling enough to overcome his rights to

7   religious freedom and they didn't refer to his claim -- in his

8   claim to Indian heritage as a reason to make a decision, just

9   to the record development -- or, sorry.

10          **MR. RODRIGUEZ:**  Exactly.  Exactly.  It was the -- the

11  record development or the inadequacy of the record.  They

12  didn't talk about any of the -- the complex legal issues that

13  were struggled with in *Wilgus*.  I believe it was just one

14  paragraph in passing and they -- they -- they do rule in favor

15  of Mr. Saenz.  But, again, it's not in any way persuasive

16  because there -- there's no argument or -- or -- or analysis.

17          **MS. SALAZAR:**  I -- I -- I'm sorry.  My analysis of

18  that case was that they -- they made a -- a decision in his

19  favor saying the government's interests were not compelling

20  enough to overcome --

21          **THE COURT:**  Do you have a copy of it with you?

22          **MS. SALAZAR:**  Of the *Jose Luis Saenz* case, no, your

23  Honor.

24          **THE COURT:**  No, not the one that was vacated but the

25  one where they combine all three cases together and remanded

1    two of them for further development?

2         **MS. SALAZAR:**  I -- just -- if I could have just one

3    second, or 30 seconds.

4         **THE COURT:**  Sure.

5      **(Pause)**

6         **MS. SALAZAR:**  You -- your Honor, I don't have the

7    case.  What I did was in an e-mail to my co-counsel, I -- I

8    took the most relevant language and put it in an e-mail to him.

9    I don't know how helpful that would be to you.  It's text

10   copied from the -- that document you were asking about.

11        **MR. RODRIGUEZ:**  And -- and to be clear, that's the

12   *Hartman* decision?

13        **THE COURT:**  Correct.

14        **MS. SALAZAR:**  Yes, I believe so.  I think you were

15   asking about the text from the decision where they vacate?

16   Was -- was it the Order to Vacate?  I'm sorry.

17        **THE COURT:**  No, the -- not the Order to Vacate but

18   the decision actually with regards to Mr. Saenz.  You say it

19   was in his favor.

20        **MS. SALAZAR:**  Right.

21        **THE COURT:**  Opposing counsel says it was in his favor

22   because what they said was, that the record wasn't developed

23   fully to -- for -- for the other side to be able to stand by

24   having complied the legal requirements with regards to the RFRA

25   whichever part of that requirement it would have been.

1           MS. SALAZAR:  Right.  That is --

2           THE COURT:  That was not met and, therefore, he wins.

3           MS. SALAZAR:  That is not the *Hartman* case.

4           THE COURT:  Not because the fact that he wasn't

5    anything else other than they just had not developed the

6    record.

7           MS. SALAZAR:  Yes.  There's -- there's a separate

8    case from the *Hartman* case.  It's the *Jose Luis Saenz*, the

9    final decision where he stands singularly without the *Hart* --

10   *Hartman* and *Wilgus*.

11          THE COURT:  But it says what your opposing counsel is

12   saying; isn't that correct?

13          MS. SALAZAR:  I did not --

14          MR. RODRIGUEZ:  We -- we acknowledge that Saenz won

15   but he won because of the -- the government didn't meet its

16   burden by developing a record that showed that their compelling

17   interests were there and that they were applying the least

18   restrictive means.

19          MS. SALAZAR:  Your Honor, I found language different

20   in the case when I read it.  It was -- it was a full blown

21   trial that he had -- that the final decision was made on.

22          THE COURT:  Yeah, but there's nothing that says that

23   he wins even though he's not a federally recognized American

24   Indian tribe -- tribal member and that, therefore, that's the

25   reason that he wins.  There's nothing in that -- it didn't turn

1  on that.  Isn't that correct?

2          **MR. COLTON:**  Your Honor, my -- my understanding is it

3  was established in the hearing that he indeed was not in an old

4  Indian in a federally recognized tribe but he did have Indian

5  ancestry.

6          **THE COURT:**  Right.  And that the issue was, there,

7  the government didn't provide sufficient evidence in the -- on

8  the record as to why that's important.  Here, they have

9  provided information on the record because it says they say

10  that -- it fosters the black market, it creates greater demand

11  and it diminished the government's role in the fostering of

12  Native American interests in religion and culture.  They have

13  all the evidence presented on the record here.  What happened

14  in that case is they didn't present any of that as to why it

15  would be necessary that you be a federally recognized American

16  Indian tribal member in order to have a lawsuit.  And so, he

17  wins for that reason because they didn't go through the length

18  that they did in this case to actually present evidence as to

19  why that -- that was important as to having the least

20  restrictive means.  But isn't that what you're saying?

21          **MR. RODRIGUEZ:**  Yeah, and that -- that has to be the

22  law or else *Wilgus* could have never happened.

23          **THE COURT:**  Right.  But what she's saying is, that

24  the -- she distinguishes *Wilgus* by saying in that case, *Saenz*

25  is different because he wins, but he wins -- the fact that he

1   won in that case has nothing to do with *Wilgus* because in that

2   case -- in *Wilgus*, obviously, the government had actually

3   presented evidence on the record as to why it would be the

4   least restrictive means to require that you be a federally

5   recognized American Indian tribal member.

6           **MR. RODRIGUEZ:**  Yes.  And -- and, your Honor, even if

7   you were to assume for the sake of argument that -- that what

8   she is saying is correct, I was --

9           **THE COURT:**  Right.  That in this -- this record is

10  different.  You actually have the evidence --

11          **MR. RODRIGUEZ:**  Yes.

12          **THE COURT:**  -- that is required and that was present

13  in *Wilgus*.  And that we shouldn't -- the Court should not be

14  sidetracked by that fact that -- that *Saenz* won and because

15  *Wilgus* is controlling here and your claim is *Wilgus* controls

16  here because we actually developed in the record at the

17  administrative level the information as to why it's the least

18  restrictive means and why it is required and should be

19  recognized and not a violation, that you be a federally

20  recognized American Indian tribal member.

21          **MR. RODRIGUEZ:**  Yes, your Honor.  And in addition to

22  *Wilgus*, there's the *Antoine* decision, the *Gibson* decision, the

23  *Wind Dancer* decision, the *Vasquez-Ramos* (phonetic) decision.

24  You know, the *Rupport* (phonetic) decision out of the 1st

25  Circuit.  There's all these Circuit Court decisions so it's not

1    just *Wilgus.*

2            **THE COURT:**  Right.  It is more than one Circuit --

3            **MR. RODRIGUEZ:**  Yes.

4            **THE COURT:**  -- that has ruled in this fashion.

5            **MR. RODRIGUEZ:**  Yes.

6            **THE COURT:**  And I -- the Plaintiffs can't say in this

7    case that the Court hasn't tried its best to find some way out

8    of it from the standpoint of them trying to exercise what they

9    view as their religious rights.  But --

10           **MS. SALAZAR:**  The 10th Circuit --

11           **THE COURT:**  They don't seem to be supported by case

12   law.

13           **MS. SALAZAR:**  Well, the 10th Circuit Court of Appeals

14   said, "For the reasons set forth below," that they do find --

15           **THE COURT:**  Yeah, but you're going back to the

16   portion of the *Saenz* case.

17           **MS. SALAZAR:**  Correct.

18           **THE COURT:**  Right.  But -- but since then, they've

19   had *Wilgus*, and the distinction here is that in the *Saenz* case,

20   whoever was representing the government didn't put the evidence

21   in necessary to support the fact as to why you should be

22   required to be a federally recognized American Indian tribal

23   member in order to have that be the least restrictive means

24   as -- as far as a requirement.  And I can see how Mr. Saenz may

25   have won because in that case, there was no evidence in the

1    administrative record.  The -- the -- the defense on this -- in

2    this case, has no -- but in this case, we don't need to get

3    there because we have presented the evidence and *Wilgus* case

4    law as well as every other Circuit that has ruled on this, is

5    very clear about this.  That -- that it is perfectly okay for

6    the government to require that you be a federally licensed

7    recognize -- federally recognized American Indian tribal member

8    in order to have -- be covered under RFRA here.

9           **MS. SALAZAR:**  But the government still hasn't met its

10   burden in proving that the permitting scheme is the least

11   restrictive means of advancing its interests.

12          **THE COURT:**  The government has presented all the --

13   go ahead.

14          **MR. RODRIGUEZ:**  Well -- it is the least restrictive

15   means.  There are two compelling governmental interests.  One,

16   of course --

17          **THE COURT:**  One is --

18          **MR. RODRIGUEZ:**  -- protecting the eagle.

19          **THE COURT:**  -- with the eagle.  And the reason for

20   that is, the numbers of the -- the bald and -- and golden

21   eagle, there is a -- it's certainly a compelling interest on

22   the part of the state well recognized by case law that under

23   the Eagle Protection Act, that we certainly have a compelling

24   state interest in that.  It is a national symbol.  It is an

25   importance aspect of Native American religion and culture and

1    that those are the compelling interests with regards to the --

2    the restrictions under the Eagle Protection Act.  Then we get

3    to -- well, what are the least restrictive means of applying

4    this?  Go ahead, sir.

5            MR. RODRIGUEZ:  Well, if -- if we open the exception

6    up to all persons of American Indian or Native American

7    ancestry, then that would undermine the regulatory scheme put

8    in place to protect the eagle.  It would cause a problem which

9    is the black market for eagle feathers to be exacerbated.  So,

10   therefore, as much as we would like to accommodate everyone's

11   legitimate interest in this case and every case, we have a

12   scheme in place to protect the eagle to tamper the -- tamp down

13   the black market and -- and that's -- that's why it can't be --

14   the exception can't be expanded more.  That's why this is the

15   least restrictive means that we have to --

16           THE COURT:  Least restrictive means being that you

17   have to be a federally recognized American Indian tribal --

18   tribal member.

19           MR. RODRIGUEZ:  Yes, your Honor.

20           THE COURT:  And the -- the -- the other part of the

21   problem in the record here is, there was no evidence to the

22   contrary on the part of the Plaintiff here that this is not

23   true.  Do I have that wrong?

24           MR. RODRIGUEZ:  No, I think -- I think Plaintiff

25   concedes that -- that -- that he's not a member of a federally

1  recognized tribe.

2      **THE COURT:**  No, but that the other things, fostering

3  the black market in all these matters, were not true.

4      **MR. RODRIGUEZ:**  That's correct.

5      **THE COURT:**  And it's on the record that the defense

6  did put that on the administrative level and based on *Wilgus* as

7  well as all these other cases, that has been recognized -- that

8  suspicion.  What's not clear and is not present is that there

9  was anything presented in -- on Mr. Soto's case that would

10  indicate that this is untrue and that this doesn't happen.

11      **MR. RODRIGUEZ:**  Correct.

12      **THE COURT:**  And so we're left, kind of like the *Saenz*

13  case, but in the opposite direction in that we don't have

14  evidence to the contrary and I'm limited to the evidence that

15  was presented.

16      **MS. SALAZAR:**  The -- your evidence to the contrary is

17  that our clients are not looking to harm any eagles or birds.

18      **THE COURT:**  No, but it's not -- it's not what your

19  clients are looking to do.  It's what, if you opened it up to

20  everyone that can claim that they're a Native American and not

21  being federally recognized in American Indian tribal member,

22  that this happens, what the government says happens or would

23  happen.  And there is evidence of that on the record, but there

24  is no evidence to the contrary that if that was not required,

25  that it would be fine and there wouldn't be a problem.  I'm

1    not, in any way, implicating that anybody here that's a

2    Plaintiff here would do anything that would be a problem here

3    or isn't honestly believing on their part that they're engaged

4    in religious activity.  But I have a standard that I need to

5    apply here.

6              **MS. SALAZAR:**  I understand.

7              **THE COURT:**  I think it's been clear by the length of

8    this case that I have a lot of sympathy for the Plaintiffs in

9    this case, but --

10             **MS. SALAZAR:**  You know --

11             **THE COURT:**  -- I don't have a lot of law to support

12   it --

13             **MS. SALAZAR:**  We --

14             **THE COURT:**  -- from -- from the cases here.

15             **MS. SALAZAR:**  We did actually offer more evidence on

16   that point.  That evidence -- evidence was that before this

17   policy went into effect, was it in the 19 --

18             **MR. COLTON:**  Forty's.

19             **MS. SALAZAR:**  -- 1940's, that -- that there weren't

20   these type -- when there weren't these type of restrictions,

21   there -- and it would be as if you were ruling in our favor

22   at -- back in that point in time, it -- it was as if it was

23   what we were asking for.  And so we can look back to the 1930's

24   and say well, how did that work?  Were the eagles dying or was

25   it -- or was it a horrible sort of -- was the government

1   overwhelmed with administrative permits and -- and working and

2   taking care of all of these.  And if you look back, they

3   weren't and we included that information and so we believe that

4   that supports the fact that if you did rule in our favor, it

5   wouldn't overburden the government.

6          **THE COURT:**  Yeah, but I --

7          **MS. SALAZAR:**  The eagle, it's not going to harm the

8   eagle, or the eagle population.  And so that -- their argument

9   doesn't -- isn't holding weight based on the history.

10         **THE COURT:**  Did you want to respond to that?

11         **MR. RODRIGUEZ:**  Well, I -- I would just say that the

12  eagle became a critically endangered species from -- from the

13  1940's until the Endangered Species Act was passed in, I think,

14  1973.

15         **MS. SALAZAR:**  But you can't --

16         **MR. RODRIGUEZ:**  That it was put on the list.  So

17  something in that -- something happened that caused them to

18  become a critically endangered species and I realize part of it

19  was environmental damage.  But then I would also point to the

20  regulatory scheme that was put in place in 1970 and 1975 has

21  worked and the eagle is -- is -- is recovering as a species.

22  So I would argue that the -- the -- the -- the efforts to fight

23  the black market have -- have been successful and -- and that

24  the eagle is well on its way to becoming a healthy species.

25         **MS. SALAZAR:**  And, obviously, we -- we would argue

```
 1   that there's so many factors that contribute to a thriving

 2   eagle population and a decreasing eagle population and that you

 3   -- you can't just say that --

 4          THE COURT:  Right.  But I'm going to be limited by

 5   what's in the administrative record here.  And so, unless

 6   somebody else has something, I'm ready to rule here.

 7          MS. SALAZAR:  The administrative record --

 8          THE COURT:  Where -- where Mr. Soto filed his claim.

 9   I mean, don't we have that?

10          MS. SALAZAR:  Yes, we do.

11          THE COURT:  And, you know, I've -- I've been liberal

12   also about letting everybody else who was not in possession of

13   feathers and didn't have any feathers taken away from them,

14   they're all Plaintiffs here also.  There were three individuals

15   who had feathers taken away from them, but I'm not even going

16   into whether they have any standing here, other than the

17   ones -- the entities that I indicated are associations that are

18   not individuals.  I'm applying the test to everybody even

19   though there's no evidence that -- I guess we can go on the

20   fact that they -- they don't need to present any evidence

21   because it would have been futile for them to have proceeded

22   with trying to get a remedy here and that because the

23   government was going to rule against them anyway.  And so,

24   we'll skip that part of it and just get down to the merits of

25   it.
```

1      **MS. SALAZAR:**  Your Honor?

2      **THE COURT:**  And you know what I'm saying?  Because we

3  have three people here that had feathers taken away from them.

4  The rest of them are members of the church and the church

5  itself.  And traditionally, you'd have to have an actual claim

6  on the part of somebody.  I can see how the three had a claim

7  under the Eagle Protection Act.  Mr. Cleveland actually doesn't

8  under the Migratory Bird Act and he's the only one that was

9  prosecuted under that and so, therefore, under *Hect*, he doesn't

10  have a claim here.  But I'm even applying the Eagle

11  Protection -- the Eagle Protection Act, RFRA claim on -- for

12  everybody even though there were no feathers taken from them

13  under the understanding that it would probably be futile for

14  them because to -- in all likelihood, if they had them, they

15  still would have ended up the same way as -- as Mr. Soto was

16  with the feathers being taken away from them.

17      **MS. SALAZAR:**  Your Honor, Plaintiffs have nothing

18  further except to say we don't believe the government has met

19  their burden to prove they have a compelling interest and that

20  those are the least restrictive means.  Thank you, your Honor.

21      **THE COURT:**  Does the defense have anything else to

22  say here?

23      **MR. RODRIGUEZ:**  Nothing further, your Honor.  Thank

24  you.

25      **THE COURT:**  Proceeding under the fact that the only

1   claims being asserted by the Plaintiffs here are the ones

2   mentioned in their Motion for Summary Judgment.  The Court has

3   considered now for some time both the Plaintiffs' Motion for

4   Summary Judgment and the defense Motion for Summary Judgment.

5   For the reasons that I'm going to state, the Court is going to

6   grant the Defendants' Motion for Summary Judgment and deny the

7   Defendants' Motion for Summary Judgment.  The claims of the

8   Plaintiffs here as the Court sees them -- of course,

9   Mr. Cleveland's claim is denied under *Hect* with regards to the

10  Migratory Bird Act.  With regards to the Eagle Protection Act

11  and the RFRA claim of the remain -- of the other Plaintiffs

12  including Mr. Cleveland, the Court is going to find that that

13  is tied into a First Amendment claim but it's really the RFRA

14  standard that applies because it is either it's more strict

15  from the standpoint of the individual.  It -- it does require

16  -- strict scrutiny applies with regards to the individual's

17  rights and in order for it to be valid under the actions of the

18  government, it does require a compelling interest so the

19  government that would be implemented in the least restrictive

20  means.

21          The compelling interest of the government here is

22  established by the *United States versus Wilgus* case in 638 F.3d

23  1274, the 10th Circuit 2011, as well as all the other cases in

24  the other Circuits that have been addressed and has been -- as

25  noted by defense counsel here, have all held that the

1  government does have an interest with regards to the eagle --

2  Eagle Protection Act with regards to protecting the bald and

3  golden eagle.  Maybe they have an interest in supporting

4  bald -- protecting bald people also, one would hope.  But it

5  is, in this case, the bald eagle and the golden eagle that is

6  implicated because, among other things, it's a national symbol

7  and it's also very important with regards to Native American

8  religion and culture.

9          The question, then, becomes is the government acting

10 in the least restrictive means?  The Plaintiffs, obviously

11 argue that it is not the least restrictive means when you

12 require that you be a federally recognized American Indian

13 tribal member.  In this case, that would apply to the church

14 also because it's an individual as a corporation.  The

15 Plaintiffs argue that that is not the least restrictive means.

16 The problem for the Plaintiffs here is, that at best, the only

17 case it can come up with as to why it is not, is a case that

18 really was based on the fact that there was no evidence

19 presented that would indicate that it was the least restrictive

20 means.

21          So when you look at the *Wilgus* case which is from the

22 same Circuit as the *Saenz* case, as well as all the other cases

23 that have considered this, it doesn't appear to the Court that

24 the cases have ruled that it is the least restrictive means and

25 that the government is not overreaching in requiring that you

1    be a federally recognized American Indian tribal member in

2    order to have the RFRA claim here.

3            For the theory and the reasons and the evidence that

4    has been proceeded with, it does -- if you open it up to

5    everyone that had Indian heritage or Native American heritage,

6    that it would foster a black market.  There would be a greater

7    demand.  It would diminish the government's role in fostering

8    Native American interests and really, then, in culture.

9            And, therefore, for that reason, the Court is going

10   to grant the Motion for Summary Judgment here.

11           I don't want anybody to leave here that -- thinking

12   that I'm not respectful of their religion or their practices or

13   not sympathetic to this.  We do have case law and,

14   unfortunately, in this case, it applies not to the benefit of

15   the Plaintiffs as the Court reads the case law and the facts in

16   this case and so, therefore, the defense Motion for Summary

17   Judgment is granted.  I do understand the concerns of the

18   individuals that are Plaintiffs in this case and their firm

19   beliefs, but it's clear to the Court under the present case law

20   that the Court can't rule in their favor.

21           I appreciate your patience including today when you

22   had to wait.  A lot of things happen in this Court.  A lot of

23   things happen in chambers that are not visible here.  But

24   you-all have been most patient.  The Plaintiffs in this case

25   being that most -- I suspect most of the individuals have been

1    faithful about defending their case which, therefore, even

2    makes them more sympathetic to the Court with regards to their

3    strong beliefs.  But it's the case law and the way I read the

4    case and the law at the present time with regards to how their

5    RFRA rights would apply here and without being a recognized

6    American Indian tribal member, neither the church nor the

7    Plaintiffs here can proceed with the claim here.

8             I was liberal in the sense of allowing even the ones

9    who didn't have feathers taken from them, to have their

10   interest at least considered here and which, therefore, it

11   protects their right to have an appeal here because I didn't

12   dismiss them for lack of standing.  I -- I would rule that they

13   meet the minimum -- the futile attempt on their -- it would be

14   futile on their part to have -- proceeded to have -- and,

15   therefore, I consider that they have standing here.  It would

16   have been futile for them to have had to go through the actual

17   violation here in order to have a standing here because the

18   result on their part would have been the same as Mr. Soto's.

19            If you-all don't have anything else, you-all can be

20   excused.  Thank you all very much.

21            **MS. SALAZAR:**  Thank you, your Honor.

22            **MR. COLTON:**  Thank you, your Honor.

23            **THE COURT:**  Thank you.

24            **THE CLERK:**  All rise.

25        **(This proceeding was adjourned at 5:54 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                          <u>April 24, 2013</u>
        Signed                                            Dated



                    *TONI HUDSON, TRANSCRIBER*