```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
                         MC ALLEN DIVISION




MC ALLEN GRACE BRETHREN CHURCH, )   CASE NO:  7:07-CV-0060
ET AL.,                         )
                                )
             Plaintiffs,        )           CIVIL
                                )
     vs.                        )        McAllen, Texas
                                )
ALBERTO GONZALEZ, ET AL.,       )   Friday, December 21, 2012
                                )
             Defendants.        )    (4:51 p.m. to 5:10 p.m.)


                         MOTION HEARING

         BEFORE THE HONORABLE RICARDO H. HINOJOSA,
            CHIEF UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiffs:          MILO COLTON, ESQ.
                         Civil Rights Legal Defense
                         Ed Fund, Inc.
                         519 Culebra Rd.
                         San Antonio, TX 78201

For Defendants:          JIMMY A. RODRIGUEZ, ESQ.
                         1000 Louisiana, Suite 2300
                         Houston, TX 77002

Court Recorder:          Antonio Tijerina

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         (361) 949-2988



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

2

**McAllen, Texas; Friday, December 21, 2012; 4:51 p.m.**

**(Call to Order)**

**THE COURT:** Please be seated. Civil action number M-7-60, *McAllen Grace Brethren Church and Others versus Secretary of the U.S. Department of the Interior, Ken Salazar in his Official Capacity*.

Can we have announcements for the parties as to who's here?

**MR. COLTON:** Milo Colton for the Plaintiffs, your honor.

**MR. RODRIGUEZ:** Jimmy Rodriguez here on behalf of the Defendant, the Secretary of the Interior, your Honor.

**THE COURT:** Okay. We have competing Motions for Summary Judgment here. Does each one of you want to address your own motion? We'll start with the Plaintiffs.

**MR. COLTON:** Yes, your Honor. Our position is that our Plaintiffs, and Reverend Soto, who is sitting beside me, whose feathers were taken during a religious ceremony, are Indians recognized by the State of Texas and they're also counted as Indians on the U.S. Census.

**THE COURT:** Don't we have two circuit cases that have ruled against your view here; one being U.S. versus Wilgus, a Tenth Circuit 2011 case, in 638 F.3d 1274, and then we've also had the Eleventh Circuit join in in a shorter opinion on the same issue?

3

1   **MR. COLTON:**  On the *Wilgus* case, the individual that
2   had the feathers was a non-Indian.
3       **THE COURT:**  But it had exactly the same arguments,
4   whether the tribe needed to be registered.  It's almost like it
5   goes through every single argument that we have in this case;
6   the first one being, does the Government have a compelling
7   interest in protecting eagles?
8       **MR. COLTON:**  Yes, sir.
9       **THE COURT:**  The Court said yes, the Government has a
10  compelling interest in protecting eagles and explained why that
11  was the case, which is the argument that is being made here by
12  the Government.
13      Then the next was the Government had a compelling
14  interest in protecting a religion of federally recognized
15  Indian tribes, and these interests were served in the least
16  restrictive means by providing access to federally recognized
17  Indian tribes.
18      It does then go, does the Government have a
19  compelling interest?  And then it then puts it and says, yes,
20  the Government does with regards to the bald eagles.
21      Then it goes into the second question, does the
22  Government have a compelling interest with regards to Native
23  American culture and religion?  And it answers that by saying
24  yes, but the only way it can be done here is by limiting it to
25  the registered tribes that are registered with the federal

1  government.  Then it explains why it comes to that conclusion,

2  as to that's why the Eagle Act is written that -- has been read

3  that way.

4         And then, is it using the least restrictive method to

5  proceed here?  And it's pretty much like it's this case; don't

6  you agree?

7         **MR. COLTON:**  Well, it is very much alike our case.

8  There are some differences though, your Honor.

9         The concern of the Government in protecting the

10  eagles -- we're not posing any threat to these eagles.  We're

11  merely seeking permission to use feathers that are shed.  In

12  most cases, they're shed annually through a process called

13  molting.  The feathers are a renewable resource.

14         **THE COURT:**  And what's your response to that,

15  Mr. Rodriguez, that these are feathers that are out there

16  laying, and nobody has killed an eagle nor harmed an eagle with

17  regards to these feathers?

18         **MR. RODRIGUEZ:**  Well, first of all, your Honor, to be

19  clear that the law and regulations that we are defending here

20  today, that I'm defending here today, are part of a broad

21  problematic scheme, so it's not that I don't want this

22  particular Plaintiff to have an eagle feather; it's that we're

23  trying to protect eagles on a broader scope.

24         **THE COURT:**  Right, but --

25         **MR. RODRIGUEZ:**  And it --

5

1 **THE COURT:** -- I mean, you have to have a compelling
2 state interest to protect -- and it is to protect the eagles.
3 **MR. RODRIGUEZ:** And then what --
4 **THE COURT:** But is this the least restrictive
5 fashion, if the feathers are just naturally falling on the
6 ground? What's the problem there? People can pick those up.
7 I mean, they're just not going to stay there. The eagle isn't
8 going to come back and put it back on.
9 **MR. RODRIGUEZ:** No, your Honor, it's not. The reason
10 for disallowing persons who are not members of a federally
11 recognized tribe to just pick up eagle feathers that are
12 naturally molted is the interest in preventing a black market
13 from being established.
14 Once an eagle feather is in someone's possession, the
15 Department of the Interior or any law enforcement agency is
16 unable to tell where that feather came from. And so the
17 position that we want to avoid is anyone that has an eagle
18 feather without proper authorization could then say, well no, I
19 got this.
20 **THE COURT:** Yeah, but that's not -- that wasn't
21 necessarily the issue in the Tenth Circuit case, was it?
22 **MR. RODRIGUEZ:** I did --
23 **THE COURT:** I mean, that wasn't the fact issue that
24 was determinative in that case, was it?
25 **MR. RODRIGUEZ:** The molting argument was not

6

1 addressed in the Tenth Circuit decision; no, your Honor.

2 **THE COURT:** Does that mean then I should have a
3 hearing with evidence presented as to why this would be a
4 problem with regards to -- isn't that a fact issue then as to
5 what the --

6 **MR. RODRIGUEZ:** Yeah.

7 **THE COURT:** -- interest of the Government is with
8 regards -- obviously, the interest of the Government is to
9 protect the bald eagle. They may argue, well -- well, in fact
10 I don't even hear him arguing that the Government doesn't have
11 that right.

12 What he's saying is, frankly, this doesn't harm the
13 bald eagle in any way whatsoever because these feathers have
14 fallen off and nobody has killed any or harmed any bald eagle,
15 and they're just laying on the ground. And that's how these
16 have been gathered.

17 **MR. RODRIGUEZ:** Your Honor, this is a challenge, of
18 course, to an administrative action, the denial of their
19 request for the return of their feathers. They were full
20 reviewed under the APA standards. We filed an administrative
21 record supporting the decision at issue in this case. In that
22 record, there are -- there is evidence directly addressing the
23 molting argument. We cite that in our brief. There is no need
24 to have a hearing.

25 As your Honor knows, under the Administrative

**EXCEPTIONAL REPORTING SERVICES, INC**

1  Procedure Act, the case was resolved in the administrative

2  record.  There is no allowance for de novo fact finding, so the

3  question is whether or not our decision with regard to molting,

4  or any other issue that is fact intensive --

5          **THE COURT:**  Well, I guess I could send it back --

6          **MR. RODRIGUEZ:**  -- is arbitrary and --

7          **THE COURT:**  -- and say you haven't really developed a

8  record?

9          **MR. RODRIGUEZ:**  Of course, your Honor, you could

10 always remand it back; of course.  But as I said, we do have

11 record evidence in the record directly addressing this --

12         **THE COURT:**  Okay.

13         **MR. RODRIGUEZ:**  -- and it's cited in our brief.

14         **THE COURT:**  How many pages exactly is the record here

15 with the rest of the administrative agencies hearings?

16         **MR. RODRIGUEZ:**  The record is very large, your Honor.

17 I believe it's in excess of a couple of hundred pages.  But we

18 provide citations to the points, yes.

19         **THE COURT:**  Right, but it's probably helpful if the

20 Court read the whole thing.

21         **MR. RODRIGUEZ:**  It's a very large record.

22         **THE COURT:**  But 200 pages isn't that long.  I thought

23 you were going to tell me thousands of pages.

24         **MR. RODRIGUEZ:**  Oh, no, I don't believe it's -- I

25 have a copy of it in my briefcase.

8

1  **THE COURT:**  Yeah, well, 200 pages is almost the size
2  of some depositions.
3  Okay.  Go ahead, sir.
4  **MR. COLTON:**  Another point, your Honor, is the
5  Government's desire to treat our Indian people as a class apart
6  from the Indians that are enrolled in federally recognized
7  tribes.
8  **THE COURT:**  Right, but that's answered by the Tenth
9  Circuit case here, and they indicate that the Government has a
10 valid reason for doing it that way and that that goes through
11 the long history of the Government's relationship with Native
12 Americans and that that's -- they have a good -- that it's a
13 valid requirement to say it has to be a tribe registered with
14 the Government.
15 Okay, and your next point?
16 **MR. COLTON:**  Those are my points, your Honor.
17 **THE COURT:**  Okay.  Well, the only one that there may
18 be any question whatsoever is the issue of, is this the least
19 restrictive means when feathers have been dropped here?
20 **MR. COLTON:**  I would also indicate, too, that --
21 **THE COURT:**  And, you know, then you have the problem
22 that it's not a registered tribe here.
23 **MR. COLTON:**  But they are Indians.
24 **THE COURT:**  I know, but the --
25 **MR. COLTON:**  This is almost analogous to the *Texas*

1 *versus Hernandez* case. I remember reading where Hispanics

2 could be discriminated against because they were white. And in

3 our case, our Indian people are being discriminated against.

4     **THE COURT:** Well, this isn't a discrimination. I

5 mean, you're claiming that this is a violation of the <u>Religious

6 Freedom Act</u>.

7     **MR. COLTON:** And we use the case of the Indian with

8 the hair issue that came out of this circuit.

9     **THE COURT:** This circuit, yes.

10     **MR. COLTON:** Or out of this --

11     **THE COURT:** But in that one, the Government -- the

12 school district wasn't able to show that there was an issue

13 with regards to the harm with regards to the child and having

14 -- what harm was that going to cause here as to -- the

15 Government here is saying, of course we have a compelling

16 interest with regards to protection of the eagle. If you let

17 this happen, then there is some harm caused to this.

18     And the school district in that case wasn't able to,

19 in any way, come up with anything that would indicate that the

20 fact that the child had long hair and didn't have it in a bun,

21 or however they were requesting, would cause an issue here.

22     **MR. COLTON:** And we can't see the harm of our people

23 having these feathers.

24     **THE COURT:** Well, I think he's trying to explain this

25 by saying the harm is going to be, Judge, that it then becomes

1 very difficult if all these feathers are floating around;

2 pardon the description here. And we won't be able to tell

3 which are ones that actually fell off as opposed to those that

4 were actually gotten because somebody did some harm to the

5 eagles. I take it that's what you're saying?

6         **MR. RODRIGUEZ:** Yes, your Honor.

7         **THE COURT:** That you don't deny that there may well

8 be some that have fallen off and they're on the ground. But

9 what you're saying is if we allow that, we will never be able

10 to tell under the black market situation as to which actually

11 fell and which were harmed -- caused to the eagle. And,

12 therefore, that's why we have to have this particular rule.

13         **MR. RODRIGUEZ:** Exactly, your Honor.

14         **THE COURT:** Which is very different from what the

15 school could have come up with, or didn't come up with anything

16 that would indicate that a child having long hair without

17 putting it in a bun was causing any kind of problem.

18         **MR. COLTON:** But we could almost extend this to

19 venison being served at a restaurant if you can't prove that

20 the person who took that deer was licensed. If you want to get

21 to the root of the problem, go after the poachers, not the

22 people who have it. And the Government says it's a difficult

23 task for them to perform, and so it's easier just to assume

24 that all these feathers, where there's no record of how those

25 feathers were --

11

1 **THE COURT:** Were you the attorney at the
2 administrative level?
3 **MR. COLTON:** No.
4 **THE COURT:** Were you the attorney in the
5 administrative level?
6 **MR. COLTON:** No, your Honor.
7 **THE COURT:** They were represented by somebody else or
8 what?
9 **MR. COLTON:** It was a contact of Reverend Soto's; I
10 believe, Mr. Cisneros. And we were not able to make any
11 contact with that attorney.
12 **THE COURT:** Mr. Cisneros. What's his first name?
13 **MR. COLTON:** Arturo.
14 **REVEREND SOTO:** Arturo Cisneros, I believe.
15 **THE COURT:** One of the -- the young Arturo Cisneros?
16 **REVEREND SOTO:** Yes.
17 **THE COURT:** Okay. Did you want to say something for
18 your Motion?
19 **MR. RODRIGUEZ:** I -- just very briefly, your Honor.
20 I certainly wish that the Government could
21 accommodate everyone's interests in this case; unfortunately,
22 we cannot. As your Honor is aware, there are many competing --
23 **THE COURT:** Well, he just offered one solution is
24 that you could go after the poachers and determine who was
25 actually doing something as opposed to the feathers that have

**EXCEPTIONAL REPORTING SERVICES, INC**

1 fallen off.

2     **MR. RODRIGUEZ:** Well, your Honor, I think the

3 distinction here is, of course, the default rule here is that

4 the eagles are protected, and that the possession of any eagle

5 feather or part is prohibited by law. And then we've carved

6 out certain limited exceptions to that.

7     **THE COURT:** And so what if it falls on your property?

8 Let's say I have a place, and an eagle has flown by and dropped

9 a feather. I can't pick it up because you have a compelling

10 interest to save the eagle, although the eagle will never come

11 back and put that feather back on? What am I supposed to do

12 with that? Just leave it out there for some -- for time to do

13 away with it, although I'd like to admire the feather and

14 respect it from my standpoint of I respect the bald eagle as a

15 symbol of this country and, therefore, I found it here and I

16 can just keep it. I don't cause any harm to anybody.

17     **MR. RODRIGUEZ:** I understand what you're saying, your

18 Honor, but under the law, you cannot pick it up and keep it and

19 possess it, and you certainly couldn't put it in a bustle as

20 Reverend Soto did and then use it and display it. I mean, I

21 agree that there is a certain amount of --

22     **THE COURT:** So you're supposed to let it out there to

23 be trampled and stepped on and everything else that happens

24 when it's laying out there and for the cows to poop on it or

25 whatever else may happen to it?

1   **MR. RODRIGUEZ:** Or leave it in nature, yes.  Yes,
2   your Honor.  Your Honor, I --
3       **THE COURT:** I guess that issue was never brought up
4   in the Tenth Circuit case.
5       **MR. RODRIGUEZ:** Well, I think -- well, with regard to
6   the Tenth Circuit case, there are at least four Circuit Courts
7   of Appeals that have dealt with this issue.  And it is the
8   Tenth Circuit in *Wilgus*, and it is the Eleventh Circuit in the
9   *Gibson* case.  It is the Ninth Circuit in the *Antoine* case, and
10  the Ninth Circuit in the *Vasquez-Ramos* case; the First Circuit
11  in the *Rupert* case.  In at least three of those cases, they
12  involve persons of Native -- of American Indian ancestry, if
13  not members of federally recognized tribes.
14      I think if that argument is not dealt with explicitly
15  in any of those decisions, I think it is implicit in their
16  discussion of the Government's interest in suppressing a black
17  market and understanding the difficulties that the Government
18  has and --
19      **THE COURT:** Well, the -- the Tenth Circuit, I didn't
20  see anything about black market.  Was it mentioned in there?
21      **MR. RODRIGUEZ:** It -- I believe that it was, but I
22  could be conflating it with another Court of Appeals decision.
23  I'm confident that among the Courts of Appeals decisions that
24  we cited that it is addressed at some point.
25      Another important point raised by the Tenth Circuit

1  is that if it's expanded to -- if the exception is expanded to
2  persons who claim an ethnic ancestry with American Indians,
3  then law enforcement would be put in the unworkable position of
4  having to judge on the spot whether or not someone is truly of
5  American Indian ancestry as they state, where now there is a
6  very clean rule for the law enforcement agencies to follow.  If
7  someone is a member of a federally recognized tribe and can
8  prove it, then they are authorized to possess a feather or
9  part, but if not then law enforcement can assume that the -- or
10 understands that the feather is not authorized under the law to
11 be possessed.
12         **THE COURT:**  So you almost think that the idea that
13 the tribe has to be recognized is almost more important than me
14 even going into the issue of the least restrictive aspect of
15 things?
16         **MR. RODRIGUEZ:**  In this case, that is the legal issue
17 that creates the bar to Plaintiff invoking the exception to the
18 Eagle Act.  Yes, your Honor, exactly.
19         And Plaintiffs' arguments set forth in their brief, I
20 believe, fly in the face of the existing case law.  We've cited
21 many cases, as we've talked about today, in our brief and I
22 believe they show, as a matter of law, that the Department of
23 Interior's position is lawful.
24         But if your Honor wants to go beyond that and look at
25 the administrative record, I believe your Honor will find --

1        **THE COURT:**  Well, I think that would be helpful just
2   to for me to get more of a flavor of exactly in what context
3   these arguments are being made.
4        **MR. RODRIGUEZ:**  Yes, your Honor, it may be.
5        **THE COURT:**  I mean, obviously, I have read the
6   Circuit cases of the Tenth and Eleventh Court -- Circuit
7   Courts.  I think the Plaintiffs probably know that they have a
8   heavy burden with these cases, but the distinction he's trying
9   to make is well, these are feathers that were out on the ground
10  and nobody caused any harm.  But the question is, do we even
11  get there if we have a tribe that is not registered with the
12  federal government.
13       **MR. RODRIGUEZ:**  Yes, your Honor, I believe you don't.
14       **THE COURT:**  Albeit they're registered with the state
15  government.
16       **MR. RODRIGUEZ:**  That's correct.  And, your Honor, I
17  don't want to waste --
18       **THE COURT:**  And Texas being a very big state.
19       **MR. RODRIGUEZ:**  It is, your Honor.
20       **THE COURT:**  It's bigger than France.
21       **MR. RODRIGUEZ:**  Yes, your Honor.  I don't want to
22  waste the Court's time or belabor any points.  I believe the
23  issues are fully addressed in our briefing and, based on our
24  briefing and everything we've said today, we would ask that the
25  Court enter a summary judgment in our favor.

1        **THE COURT:**  Did you want to add anything to your
2   briefing orally here?
3        **MR. COLTON:**  No, your Honor.
4        **THE COURT:**  Okay, well it's obviously clear to you
5   all that I want to actually read the two hundred and some pages
6   in the administrative record here.
7        I think it is going to be difficult from the
8   standpoint of the Plaintiffs here with regards to the issue of
9   the cases as they line up here at the Circuit Court level, but
10  I do want to look at this one issue that was raised here by
11  you.
12       **MR. RODRIGUEZ:**  Your Honor, if I may?
13       **THE COURT:**  Yes.
14       **MR. RODRIGUEZ:**  I just want to clarify, I have the
15  record here and it is larger than I stated.  It's 648 pages,
16  although many of the Court decisions that we've talked about
17  today were reviewed by the agency and, therefore, included in
18  the administrative record, so the factual issues addressed in
19  the record are, I believe, much shorter than the 648 pages.
20       **THE COURT:**  Of course, the conviction is not an issue
21  here.  That has already been taken care of, right?
22       **MR. COLTON:**  Yes, sir.
23       **THE COURT:**  And it has been appealed and affirmed on
24  appeal?
25       **MR. COLTON:**  Yes, your Honor.

1       **THE COURT:** Was there any further appeal from the
2 District Court on that issue?
3       **MR. COLTON:** No, your Honor.
4       **THE COURT:** And the fine has been paid or what?
5       **MR. COLTON:** Yes, your Honor.
6   **(Pause)**
7       **THE COURT:** Okay, it's going to be February 21st at
8 4:00 o'clock. If you all don't have anything else, you all can
9 be excused. Thank you.
10      **MR. RODRIGUEZ:** Thank you, your Honor.
11      **MR. COLTON:** Thank you, your Honor.
12      **THE COURT:** You all can be excused. Thanks.
13   **(This proceeding was adjourned at 5:10 p.m.)**

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____        April 30, 2013_

TONI HUDSON, TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC